In re BAUDOUINE.

(District Court, S. D. New York. September 14, 1899.)

1. BANKRUPTCY—ASSETS OF ESTATE—SURPLUS INCOME OF TRUST.

Where trustees under a will are thereby directed to pay to a certain beneficiary, during his life, one-fourth of the income of the trust estate, with no direction for accumulation, and no discretion in the trustees as to such payment, and the law of the state (New York) provides that the surplus of an income so settled, beyond what is necessary for the support of the beneficiary, shall be liable in equity to the claims of his creditors, such surplus income, on the bankruptcy of the beneficiary, may be claimed by the trustee in bankruptcy as assets of the estate, although it is not within the classes of property enumerated in Bankruptcy Act, § 70, as vesting in the trustee, for that section is not to be construed as exclusive of other kinds of assets not therein described.

2. SAME—AFTER-ACQUIRED PROPERTY—ACCRUING INCOME.

Such surplus income, though it accrues after the adjudication in bankruptcy, is not after-acquired property in such sense that it will not pass to the trustee in bankruptcy, the bankrupt's interest in the income of the trust estate being a vested interest at the time of the adjudication, and a present property right then existing.

**3. SAME—ASCERTAINMENT OF SURPLUS—SUMMARY PROCEEDINGS.**

The amount of such surplus income of the bankrupt may be ascertained and made available to creditors by a summary proceeding in the court of bankruptcy, on petition of the trustee. There being no adverse claim of title by any third person as respects the income payable to the bankrupt, resort to a plenary suit in equity is not necessary.

**4. SAME—PARTIES.**

In proceedings in a court of bankruptcy to determine the amount of the surplus income accruing to a bankrupt under the trusts created by a will, whereby the trustees therein named are directed to pay to him a fixed share of the income of the trust estate during his life, in order that such surplus may be made available for creditors in the bankruptcy proceedings, the testamentary trustees may be made parties by petition, so as to be bound by the decree, in the exercise of the jurisdiction conferred on the courts of bankruptcy by Bankruptcy Act, § 2 (6), to "bring in additional parties in proceedings in bankruptcy, when necessary for the complete determination of the matter in controversy."

**5. SAME—EFFECT OF STATE STATUTE.**

Though the state statute provides that surplus income accruing to a beneficiary under a will, above what is necessary for his support, shall be "liable in equity" to the claims of his creditors, this does not oblige a trustee in bankruptcy, who seeks to make such surplus income of the bankrupt available for creditors, to bring a bill in equity, nor prevent the court of bankruptcy from ascertaining the amount of such surplus, and subjecting it to administration in summary proceedings; as state laws regulating practice have no reference to proceedings in bankruptcy.

In Bankruptcy. On motion of the trustee in bankruptcy for an order directing the referee to ascertain and report the amount of the surplus income accruing to the bankrupt from a certain trust estate.

Edward Van Ingen, for the motion.

Shearman & Sterling, Charles F. Halsted, and John A. Garver, opposed.

BROWN, District Judge. By a codicil to the will of Charles A. Baudouine, executed in September, 1893, a large amount of real estate situated in the state of New York was left to his executors in trust to apply one-quarter of the rents, issues, profits and income thereof to the use of his grandson John F. Baudouine, the bankrupt above named, during his life. One other quarter was given to his grandson Charles A. Baudouine, and those two grandsons were also made executors and trustees of the will. Subsequent to the death of his grandfather, the above-named John F. Baudouine filed his voluntary petition in bankruptcy in this court on March 31, 1899, and on the 25th of April following was adjudged a bankrupt. A trustee in bankruptcy was subsequently appointed on June 5th. In his schedules the bankrupt states that he "is a beneficiary under the will of his grandfather and entitled to one-quarter of the income of the trust estate created by said will, and has a contingent interest in other shares of said income now vested in other beneficiaries, but as he is advised by counsel and verily believes both said vested and contingent interest are inalienable and cannot be affected by this proceeding."

By section 60, art. 2, tit. 2, c. 1, pt. 2, Rev. St. N. Y., concerning uses and trusts (page 729), a trust like that created by this will, vests the whole estate in the lands "in the trustees in law and in equity, sub-

ject only to the execution of the trust." The persons for whose benefit the trust is created, it is declared, "shall take no estate or interest in the lands, but may enforce the performance of the trust in equity."

Section 63 declares:

"No person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest."

Section 57 declares:

"Where a trust is created to receive the rents and profits of lands and no valid direction for accumulation is given, the surplus of such rents and profits beyond the sum that may be necessary for the education and support of the person for whose benefit the trust is created, shall be liable in equity to the claims of the creditors of such person in the same manner as other personal property which cannot be reached by an execution at law."

The trust under the above will is of the simple character referred to in the sections above quoted. There is no direction for any accumulation, nor is there any provision making the payment of the income to the beneficiary dependent upon any discretion of the trustees, nor any provision for any different application of the income in case of the insolvency or bankruptcy of the beneficiary, such as is sometimes associated with similar trusts. Numerous decisions of the court of appeals and of other courts of the state of New York, leave no question that though the interest in such trust is inalienable by the beneficiary, the surplus beyond what is necessary for his support may be appropriated to the claims of creditors. Williams v. Thorn, 70 N. Y. 270; Schenck v. Barnes, 156 N. Y. 316, 50 N. E. 967; Moore v. Hegeman, 72 N. Y. 376; Tolles v. Wood, 99 N. Y. 616, 1 N. E. 251; Id., 16 Abb. N. C. 1; Schuler v. Post, 18 App. Div. 374, 46 N. Y. Supp. 18.

Upon the examination of the bankrupt it appeared that his income from his vested one-quarter interest in the estate during the year previous was about $30,000, or $2,500 per month, and that he had additional income in his receipts from commissions on the estate and otherwise; and that he is a widower and has a family of three children, the oldest of whom is 8 years of age. Upon a petition setting forth these and other facts, the trustee applies for an order directing the referee in charge to inquire and report what is the amount of the income of the bankrupt from said estate, and what portion thereof is necessary for his support, with a view to having the surplus applied to the claims of creditors through the trustee in bankruptcy.

Several objections are raised both to the right to the surplus income in bankruptcy, and to the proceeding by petition to reach it.

1. The income sought to be reached is that accruing since the filing of the bankrupt's petition and the adjudication in bankruptcy; and it is urged that such income is after-acquired property, not available in bankruptcy. But under this will the bankrupt's interest in the income during his life is a vested interest; as such it was a present property right existing at the time when the adjudication was made, although the amounts due under it become payable to him from time to time afterwards. Except for the provision of the statute making this interest inalienable by the bankrupt's own acts, it could have been assigned and transferred by him like any other species of proper-

ty; and such an assignment would have carried all future payments. The objection, therefore, that the bankrupt's interest was not a present property right at the time of the adjudication and that the subsequent payments of income would be after-acquired property, cannot be sustained. Future payments are available to pay present debts. Wetmore v. Wetmore, 149 N. Y. 520, 530, 44 N. E. 169; Williams v. Thorn, supra. In the language of Mr. Justice Swayne in Nichols v. Levy, 5 Wall. 433, 441:

"It is a settled rule of law that the beneficial interest of the cestui que trust, whatever it may be, is liable for the payment of his debts."

2. It is further objected that a beneficial interest of this nature is not such a property interest as is authorized to be taken by the trustee in bankruptcy under the provisions of the bankrupt law of 1898, inasmuch as it is not literally included in any of the clauses of section 70 stating what property shall vest in the trustee. By that section, the trustee is vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, (1) to documents relating to his property; (2) to interest in patents, etc.; (3) to beneficial powers; (4) to property transferred in fraud of creditors; (5) to property which the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him; (6) to rights of action arising upon contracts or from the unlawful taking of property; with the further right (e) to avoid any transfer by the bankrupt which any creditor might have avoided. The above clause 5 manifestly does not literally embrace this trust interest, inasmuch as by the law of this state the trust income could not be transferred by the bankrupt nor levied on or sold under judicial process.

The bankruptcy act, however, cannot be construed so narrowly as to exclude any vested interest constituting an asset available to creditors, merely on the ground that this asset is not expressly enumerated in section 70. Other provisions of the bankrupt act show that the act is designed to cover all the property and estate of the bankrupt and all assets that can in any manner be legally made available for the payment of his debts, and to distribute all those assets equally among his creditors. As an incident to this complete distribution of assets, it further provides for the bankrupt's discharge from his debts. A discharge in bankruptcy upon any other condition than the complete appropriation of every known asset legally available to creditors, would be not only a glaring wrong to creditors but contrary to every conception of a just system of bankruptcy. Here there is presumably a considerable surplus income, which under the will and the law of this state is expressly made available to creditors for the payment of their claims. If the bankrupt is discharged, as he presumably may be, and this surplus is not appropriated in bankruptcy, the creditors will be deprived of any resource against this asset, though by law entitled to it; because their claims will be canceled by the discharge; and even if any redress remained to them, any one creditor first obtaining a decree in the state court against the surplus, would be entitled to priority over others.

It is manifest, therefore, that the bankrupt act cannot be justly administered, nor the rights of creditors be secured against certain loss, unless this important asset is reduced to the possession and administration of the bankruptcy court. Section 70 in no way prohibits this. Its provisions are not exclusive of other assets not therein described; and it should not be made exclusive by unnecessary construction, when that construction would evidently thwart the purpose of the act, and work a manifest wrong to creditors and an advantage to the debtor to which he is not entitled. By section 2, the court of bankruptcy is authorized (7) to cause the estates of bankrupts to be collected, reduced to money and distributed. By section 47, trustees are required (2) to collect and reduce to money the property of the estates for which they are trustees. There can be no doubt that the terms "property" and "estates of bankrupts" are here used in the broadest sense, and intended to include every species of property not legally exempt, that can be made available for the benefit of creditors. Sections 14 and 29 make a willful concealment of assets a ground for refusing a discharge. It would be absurd for the law to deny a discharge for concealment of assets, and then to refuse to take them when made known. The penalty for concealment is the highest evidence of the intent to appropriate every available asset.

Section 70 cannot be so construed as to defeat this intent merely because a certain asset may not happen to fall within the literal words of this affirmative section. It is not a case in which the maxim "Expressio unius exclusio alterius" applies. In some states, moreover, equitable interests may be sold upon execution. It cannot have been the intent of the bankrupt act to make the creditor's right to have the debtor's property belonging to creditors distributed in bankruptcy or not distributed at all dependent in the different states upon a mere question of state practice as to the mode of getting at the debtor's property.

I find, therefore, that the surplus income, if any, when ascertained, will be an asset vesting in the trustee as the representative of creditors and distributable in bankruptcy.

3. It is further objected that the surplus income, even if liable to creditors in bankruptcy, cannot be reached upon petition in the bankruptcy proceeding, but only by suit in equity in the state court under section 23, cl. b.

It was settled under the bankruptcy act of 1867 (Smith v. Mason, 14 Wall. 419), and the same may possibly be the general rule under the present act (In re Abraham, 35 C. C. A. 592, 93 Fed. 767), that controversies in reference to the title to property claimed adversely by third persons and in their possession prior to the proceedings in bankruptcy, should be determined by plenary suit rather than by summary proceedings upon petition in bankruptcy. The right of trial by jury in many cases requires this rule. In the present case, however, there is no adverse claim of title by any third person as respects the income payable to the bankrupt. The trustees under the will have no color of claim to any beneficial interest in the income; while the trustee in bankruptcy makes no pretense of claim to the principal of the trust estate. By the terms of the will and the legal effect of the New

York statutes above cited, the trustees hold the income collected in trust to pay to the bankrupt so much of it as may be needed for his support, and to pay the surplus, as duly adjudged, to his creditors. The trustees have no more interest adverse to creditors than they have adverse to the beneficiary. The present case does not come, therefore, within the authorities cited, which, as I understand, require a plenary suit only where some substantial right or title of a third party in possession of the assets would be invaded by a more summary proceeding. See Beach v. Hobbs, 82 Fed. 916, 919; In re Smith, 92 Fed. 135; In re Buntrock Clothing Co., Id. 886. The only adverse interest or claim is by the bankrupt, and he is estopped from raising any such objection; since by his own application in bankruptcy he has voluntarily submitted himself and every asset available to creditors, to the jurisdiction and ordinary proceedings of this court, so far as he himself is concerned; while the trustees, having no adverse interest, may properly be made parties to the proceeding by petition, so as to be bound by the decree, under the provisions of section 2 of the bankrupt act, which expressly gives this court jurisdiction in bankruptcy proceedings, not only (7) to cause the estates of bankrupts to be collected, but (6) "to bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of the matter in controversy"; and still further (11) "to determine all claims of bankrupts to their exemptions."

Under the latter clause I see no reason to limit the word "exemptions" to real estate or chattels exempted by state laws from levy and sale on execution. It is not thus limited in the above clause, nor in section 6, which provides that "this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws."

The bankrupt states this trust income in his petition, and claims that it is exempt under the state law. It certainly is exempt wholly, or in part; and it is solely under the state law that this exemption exists. By the state law, this exemption is a conditional or qualified exemption; and under the above provisions, it appears to be within the express grant of jurisdiction, and the duty of the court "in bankruptcy proceedings" to determine the amount of this exemption in order that whatever surplus is left may not be lost to creditors. In the case of Spindle v. Shreve, 111 U. S. 542, 546, 4 Sup. Ct. 522, 524, Mr. Justice Matthews, in referring to a trust interest of this character, speaks of it in terms as an "exemption." "The bankrupt act (Rev. St. § 5045)," he observes, "expressly adopts the local law of the state as to such exemptions."

4. The provision of the state statute, that the surplus "shall be liable in equity to the claims of creditors in the same manner as other personal property which cannot be reached by an execution at law," so far from distinguishing such a surplus from any other equitable assets, as respects the mode of reaching it, declares that it shall be liable in the same manner. By the general law of debtor and creditor, no equitable assets could be reached except by bill in equity. In a court of bankruptcy, however, which in its principles of administra-

tion is in the highest sense a court of equity, more expeditious proceedings by petition or on order to show cause are allowed in many cases for the purpose of recovering assets and settling disputed claims, though without any sacrifice of substantial rights. Provisions of the state law relating to practice merely, whether as respects legal or equitable assets, have no reference to a federal system of bankruptcy or to the practice under it, as respects the collection of such assets or the determination of their amount. In bankruptcy it is immaterial what may be the practice of the state courts, for the time being, in that regard. Section 57 of the New York statute above cited, was enacted while the old common law and chancery practice remained unchanged. The effect of that provision was to make this asset collectible in the same manner as any other equitable asset. In bankruptcy, therefore, it would be subject to the ordinary rule of practice in courts of bankruptcy; and where as here there are no hostile claims of title to the fund by third persons, a plenary suit is unnecessary. Though changes in the state practice have here been made as to the mode of collecting most equitable assets, a bill in equity is still required to reach a surplus trust income. Its relations to the practice in bankruptcy, however, remain precisely as before. On the hearing of a bill in equity in the state court the income necessary to the debtor for the support of himself and of those dependent upon him, according to their station in life, is determined upon the proof submitted by the parties. The same inquiry will be made upon the petition here presented; all the proofs that could be presented in a plenary suit may be presented here; the trustees may be cited to answer, and to offer such proofs as they may be advised; and there is the same opportunity for a hearing before the court and for a review by appeal as in a plenary suit. No substantial right will be lost or abridged by the proceeding on petition, and the motion is therefore granted.