## CHANDLER v. NATHANS.

(Circuit Court of Appeals, Third Circuit. July 6, 1925.)

No. 3323.

1. **Bankruptcy** ⬅145(1) — **Bankrupt's unliquidated claim for refund of excess taxes held "right of action" vesting in trustee.**

Bankrupt's unliquidated claim against treasury department for refund of excess income tax payments *held* a "right of action" arising from unlawful taking of bankrupt's property, vesting in trustee under Bankruptcy Act, § 70, par. 6 (Comp. St. § 9654), notwithstanding right was unassignable by virtue of Rev. St. § 3477 (Comp. St. § 6383); "right of action" being a formal demand by one upon another, in assertion of legal or equitable right, insisted upon in proper tribunal.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Right of Action.]

2. **Bankruptcy** ⬅148—**Tax refund held payable to trustee rather than bankrupt, though paid after bankruptcy and after new law had repealed old.**

Although Revenue Act of 1921 repealed Revenue Act of 1918, under which excessive tax had been paid, refund of excess *held* under old statute, by virtue of Act of 1921, § 252 (Comp. St. Ann. Supp. 1923, § 6336⅛uu), continuing right to refund under former act, and therefore trustee in bankruptcy was entitled, rather than bankrupt claiming refund as newly acquired under last act.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

In the matter of Frederick T. Chandler, Jr., and others, individually and as copartners trading as Chandler Bros. & Co., bank-

rupts. The petition of Frederick T. Chandler, Jr., against Harry Nathans, trustee in bankruptcy, praying that the trustee be directed to surrender a certain sum to petitioner, was denied by the referee and the District Court, and the bankrupt appeals, with a petition to revise and review. Decree affirmed.

See, also, 290 F. 988.

John C. Gilpin and Graham & Gilfillan, all of Philadelphia, Pa., for appellant.

J. Howard Reber, F. B. Bracken, Percival H. Granger, and Reber, Granger & Montgomery, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Frederick T. Chandler, Jr., a member of the stock brokerage firm of Chandler Bros. & Co., filed an income tax return for the year 1919, in which he showed income substantially larger than that which he had actually received. Whether he did this with the purpose of concealing his failing circumstances or the failing circumstances of the firm is not a matter of present concern. Of the taxes assessed on this peculiar return he made three of the four payments—March, June, and September—all larger than they should have been. When the December payment came due he did not have the money with which to meet it. Thereupon he looked about for a way out. He found it by filing a claim for refund of the excess taxes previously paid and unlawfully collected. While his claim was pending, Chandler and the firm went into bankruptcy, and thereafter, on prosecution by his trustee, his application for refund was allowed, and $44,549.60 paid by the government. Chandler then filed a petition with the referee in bankruptcy praying that the trustee be directed to surrender this sum to him. The referee entered an order denying the prayer of the petition. On review, the District Court approved the referee's order. The case is here on appeal, and on petition to review and revise in matter of law. The money paid by the government has been placed on special deposit to await payment to Chandler or to his trustee in bankruptcy according as this court shall decide.

There are two issues involved: First, whether the bankrupt's unliquidated claim for refund was property, or a property right, which vested in his trustee in bankruptcy by operation of the bankruptcy law;

and, second, whether the money refunded on the claim in 1923 was paid under the Revenue Act of 1921 (42 Stat. 227), which repealed the Revenue Act of 1918 (40 Stat. 1057), under which the tax was paid and claim for refund made, and whether accordingly the money so paid was after-acquired property of the bankrupt, passing directly to him.

[1] The answer to the first question depends on the interpretation of those provisions of the Bankruptcy Act (Comp. St. §§ 9585–9656) which declare what property of the bankrupt vests in the trustee on adjudication. The main, if not the controlling, provision of the act in this respect is section 70 (Comp. St. § 9654), which provides that: "The trustee of the estate of a bankrupt, * * * shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt * * * to all * * * (3) powers which he might have exercised for his own benefit; * * * (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him; * * * and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

If section 70 includes every kind of property which by force of the statute passes from the bankrupt to his trustee, and excludes property of every other kind, there is a debatable question whether the right which the Revenue Act of 1918 gave a taxpayer to apply for and obtain a refund of taxes unlawfully paid and collected comes within the provision. If the section is not strictly inclusive of all property of the bankrupt which on adjudication vests in his trustee, the question is less difficult.

On this question the learned trial court followed the law of English v. Richardson, 80 N. H. 364, 117 A. 287, 22 A. L. R. 1302, 48 Am. Bankr. R. 582, declared by the Supreme Court of New Hampshire in 1922, where, in turn, that court followed In re Baudouine, decided by Judge Brown in the District Court of the United States for the Southern District of New York in 1899 (96 F. 536), approved as to the law by Judge Lacombe in a concurring opinion when on appeal to the Circuit Court of Appeals for the Second Circuit (101 F. 574, 41 C. C. A. 318). In the English Case the Supreme Court of New Hampshire said: "The de-

fendant contends that the trustee must look to the Bankruptcy Act for his title, and that the terms of section 70a of that act, specifying estate of the debtor which vests in the trustee, are not broad enough to include the deposit [the right there in issue]. The properties enumerated in this section include [those we have just quoted as 4, 5, and 6]. It is not perceived why the debtors in the instant case could not, any time before bankruptcy, have transferred whatever equity they had in the deposit over and above the obligation secured by it. But if there were any doubt upon this question, it is sufficient to say that the enumeration of property in section 70a is not exclusive of other assets of the debtors not therein specifically defined."

Quoting Judge Brown in Re Baudouine, the court continued: "This and other provisions of the act show that the act was designed to cover all assets and estate of a bankrupt that can in any manner be made legally available for the payment of his debts. * * * In specifying the properties of debtors which vest in the trustee, the Bankruptcy Act of 1898 deals in particulars, where in the Act of 1867 general words were used. It is not thought, however, that they differ in meaning. Collier, Bankruptcy (10th Ed.) 994. The statute is broad enough to include the right to redeem the property of a debtor hypothecated to secure future rentals."

This is the substance of the statement more elaborately made in Re Baudouine. In that case Judge Brown did not think that section 70 of the Bankruptcy Act, in classifying the properties of a bankrupt which by operation of law vest in his trustee, made those properties exclusive of other assets of the bankrupt not therein specifically named. Inquiring what properties vest, he went to other provisions of the Bankruptcy Act and construed the act rather than section 70, saying: "The Bankruptcy Act, however, cannot be construed so narrowly as to exclude any vested interest constituting an asset available to creditors, merely on the ground that this asset is not expressly enumerated in section 70. Other provisions of the Bankrupt Act show that the act is designed to cover all the property and estate of the bankrupt and all assets that can in any manner be legally made available for the payment of his debts, and to distribute all these assets equally among his creditors. * * * It is manifest, therefore, that the Bankrupt Act cannot be justly administered, nor the rights of creditors be secured against certain loss, unless this important asset is reduced to the possession and administration of the bankruptcy court. Section 70 in no way prohibits this. Its provisions are not exclusive of other assets not therein described; and it should not be made exclusive by unnecessary construction, when that construction would evidently thwart the purpose of the act, and work a manifest wrong to creditors and an advantage to the debtor to which he is not entitled. By section 2, the court of bankruptcy is authorized (7) to cause the estates of bankrupts to be collected, reduced to money and distributed. By section 47, trustees are required (2) to collect and reduce to money the property of the estates for which they are trustees. There can be no doubt that the terms 'property' and 'estates of bankrupts' are here used in the broadest sense, and intended to include every species of property not legally exempt, that can be made available for the benefit of creditors. Sections 14 and 29 make a willful concealment of assets a ground for refusing a discharge. It would be absurd for the law to deny a discharge for concealment of assets, and then to refuse to take them when made known. * * * Section 70 cannot be so construed as to defeat this intent merely because a certain asset may not happen to fall within the literal words of this affirmative section. It is not a case in which the maxim 'Expressio unius exclusio alterius' applies."

When on appeal to the Circuit Court of Appeals for the Second Circuit this aspect of the case was not reviewed in the opinion. The decree was reversed on the single ground that the rights of the parties should be adjudicated in a plenary suit brought in the District Court. Judge Lacombe, in a concurring opinion, went further and, addressing himself to the law, said: "I think, however, that upon the questions of law arising upon the merits, which have been fully discussed, and which will be in no wise changed by being presented in a suit in equity, the opinion of this court should be expressed for the guidance of the district court in disposing of such suit. Upon this branch of the case [that is, upon the branch of the case dealing with what property of a bankrupt vests in his trustee] I concur in the careful and exhaustive opinion of the district judge."

On the reasoning of these cases the learned trial court held in the case at bar that a bankrupt's right to a refund of taxes unlawfully paid and collected is property in the general nature of a chose in action, and that on adjudication it vests in his trustee.

Though the reasoning of the cited cases and of the learned trial court is persuasive, we shall not rest our decision on it, for we are of opinion that, even if section 70 be construed as limiting the assets of a bankrupt which vest in his trustee by operation of law to those there classified, the right to apply for a refund of taxes and, when granted, the right to taxes refunded, vest in the trustee under one of the enumerated classifications of that provision of the statute, namely, paragraph 6, which includes: "Rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his (the bankrupt's) property." What was "his property" in this case? It was the money he had paid for taxes. As the money had left him and had been received and detained by the government, it was no longer in his possession. Yet he was the owner of a claim upon the United States for its return. National Bank v. Downie, 218 U. S. 345, 356, 31 S. Ct. 89, 54 L. Ed. 1065; 20 Ann. Cas. 1116. By another statute Congress had very generously given him a right to assert his claim and regain possession and enjoyment of his property; that is, by another law it had given him a right to recover the property which he had improvidently turned over to the government, and which the government had unlawfully received and detained. 33 Corpus Juris, 361. Manifestly this is a property right. Of course such a right cannot be assigned and thereafter the money collected from the government by the assignee, for that would be in violation of section 3477 of the Revised Statutes (Comp. St. § 6383). But here the right was not assigned to the trustee, and the trustee, if he can validly exercise the right, does it not as assignee but as one to whom the right has passed by operation of the bankruptcy law. If it come to him by operation of this law, it is, we shall assume, because of the words of the law, vesting in him "rights of action arising * * * from the unlawful taking or detention of * * * his property."

There is no doubt that the government unlawfully took and unlawfully detained what, by its refund, it has admitted to be an unlawful tax—that is, there is no doubt that the government unlawfully took and detained the "property" of the taxable; and there is no doubt that, but for bankruptcy, Chandler would have a right to receive and retain the money refunded. His right to the money refunded was based on his right to his property, and this right was recognized by the act of 1918, when it gave him

a method or action by which to regain his property. The trustee's right to a refund of taxes previously paid by the bankrupt depends, therefore, upon whether the words "rights of action," as used in paragraph 6, § 70 of the Bankruptcy Act, mean (among others) the kind of action which the Revenue Act of 1918 gave the bankrupt, or mean only a right to institute and maintain a technically formal suit in a court of law or in a court of equity. We do not think the words "rights of action" should be construed so narrowly. The word "right" is defined generally as "a well-founded claim." The word "action" is broadly defined as "a doing of something; something done." The two words, when joined, mean in law a formal demand made by one upon another in the assertion of a legal or equitable right and insisted upon in a proper tribunal. In this sense the word "action" includes all the formal proceedings attendant upon such a demand. The right to a refund of taxes unlawfully paid and collected was a new right. Before the statute created it, no such right existed. In conferring the right, the statute provided for its exercise by prescribing the proceeding and designating the forum, namely, the presentation of a petition to a certain department of the government which had power—that is, which had jurisdiction —to pass upon the petition, adjudicate the claim, and allow or withhold the refund. Therefore we think the words, "rights of action arising * * * from the unlawful taking or detention of * * * his property," are broad enough to include the right to a refund asserted in an action or proceeding instituted and prosecuted before the Treasury Department, and that such a right of a bankrupt taxpayer vests in his trustee by operation of the bankruptcy law.

[2] The next question is whether the refund was granted under the act of 1918, under which the tax was assessed and paid and the claim for refund filed, or whether it was granted under the act of 1921, in force at the date of the refund, thereby making the money refunded property acquired after bankruptcy. In insisting that the refund was made under the later act, counsel for the bankrupt rely mainly on the history of its provision for refund and of similar provisions in other acts. We are not concerned with the history of legislation, or with the matters which inspired it, when Congress has spoken in language which is in no sense ambiguous and which therefore is not open to construction. The Revenue Act of 1918, under which the tax was paid and the ap-

plication for refund made, gave the right to a refund in this case. True, the Revenue Act of 1921 repealed the Revenue Act of 1918, but, by express provision of section 252 of the later act (Comp. St. Ann. Supp. 1923, § 6336⅛uu), it saved to all persons who had paid taxes under the act of 1918, and had applied for their refund, the right, which that act had granted them, to prosecute their applications to final decision, stating "that nothing in this section [the repealing section] shall be construed to bar from allowance claims for refund filed prior to the passage of the Revenue Act of 1918 under subdivision (a) of section 14 of the Revenue Act of 1916, or filed prior to the passage of this act under section 252 of the Revenue Act of 1918."

This clause of the act of 1921 does not confer a new right to a refund; it kept alive the old right previously conferred by the act of 1918. It saved to Chandler the right, but for bankruptcy, to prosecute the application he had filed under the act of 1918 for a refund of taxes he had paid under that act. Having held that, on bankruptcy, this right vested in his trustee, it follows that the money which the government refunded is not after-acquired property of the bankrupt, but is money belonging to his trustee.

The decree below is affirmed.