Gerald SEGAL, Individually and d/b/a
Segal Cotton Products, et al.,
Appellants,

v.

William J. ROCHELLE, Jr., Trustee,
Appellee.

No. 21043.

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1964.

Rehearing Denied Oct. 12, 1964.

GRIFFIN B. BELL, Circuit Judge.

This appeal presents a question of prime importance in the administration of the Bankruptcy Act. At issue is whether loss-carryback refunds forthcoming under the federal income tax statutes[1] and arising from losses sustained prior to but in the year of bankruptcy go to creditors or the bankrupt.

Gerald Segal and Sam Segal, as individuals, filed voluntary petitions in bankruptcy on September 27, 1961. On the same date Segal Cotton Products, a partnership composed of Gerald Segal and Sam Segal, filed a voluntary petition in bankruptcy. The trustee here was duly appointed and qualified in all three proceedings.

Segal Cotton Products incurred losses during the year 1961 prior to the filing of the petition on September 21. The trustee filed claims for loss-carryback adjustments with the Internal Revenue Service in light of income taxes having been paid by the individual partners for the two preceding years. Tax refunds were obtained pursuant thereto, and these were the subject matter of claims filed on behalf of Gerald and Sam Segal which were denied by the Referee.[2] The District Court affirmed, holding that the refunds were assets of the trustee for the benefit of creditors. This holding was contrary to that of the Third Circuit, on similar facts, in the case of In re Sussman, 3 Cir., 1961, 289 F.2d 76, 77, and that of the First Circuit in Fournier v. Rosenblum, 1 Cir., 1963, 318 F.2d 525. This appeal followed.

The question presented is whether the rights to the loss-carryback adjustments passed to the trustee. The bankrupts contend that the rights accrued after the date of bankruptcy since applications for refunds, resting as they must on the results of the whole taxable year, could

Henry Klepak and Roy J. True, Dallas, Tex., for appellants.

William J. Rochelle, Jr., Dallas, Tex., for appellee.

Before RIVES, BELL and WRIGHT,* Circuit Judges.

* Of the D. C. Circuit, sitting by designation.

1. § 172 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 172.

2. The refunds to Gerald Segal were in the amounts of $283.07 on the 1961 loss-carryback to 1960, and $1,608.21 to 1959. The refunds to Sam Segal were in the amount of $505.63 to 1960, and $1,839.41 to 1959.

not have been filed until the end of the year. The answer depends on whether such a right to refund or adjustment is transferable property within the meaning of § 70, sub. a(5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a(5), in pertinent part as follows:

> "(a) The Trustee of the estate of a bankrupt * * * shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title * * * to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: * * * *".

It is to be noted that the term "property" as used in this section includes rights of action which could have been transferred prior to the filing of the petition.[3] The court held in Sussman, supra, that the right to a loss-carryback adjustment is not property as defined in § 70, sub. a; and further, if property, because of the proscription contained in the Assignment of Claims Act, 31 U.S.C.A. § 203, it could not have been transferred prior to the filing of the petition in bankruptcy. In Fournier v. Rosenblum, supra, the court went only so far as to hold that the right was not embraced in the concept of property as used in § 70, sub. a. With deference, and after careful consideration of the reasoning of these respected sister courts, we find ourselves unable to follow their decisions. We hold that the right to a loss-carryback refund or adjustment, although contingent as to amount, is transferable property within the meaning of § 70, sub. a(5), and affirm.

We begin with the proposition that it was the intent of Congress to secure to creditors all property of a bankrupt. The refunds here in question will pass to the bankrupts freed from claims of their creditors if such a right is outside the scope of the definition of property as used in the Act. This will be the result in spite of the fact that the refunds arose as a result of losses in the partnership business which in the first place caused the claims of the creditors to come into existence. This windfall to the bankrupts at the expense of the creditors was recognized by the court in Sussman, and Fournier v. Rosenblum, but each court felt that it was a matter which required legislative correction.

Our conclusion stems from a construction which gives effect to the congressional intent. It is true that the refunds flow from newly created rights in the sense that the loss-carryback provision came into the law in 1942, after the enactment of § 70, sub. a(5) in 1898. Moreover, such refunds may not be sought until the end of the taxable year in which the losses arise, and thus the realization of the right is not only deferred but a contingency is posed as to the amount of the loss since conceivably the applicable losses may be reduced or increased after the date of the filing of the petition in bankruptcy.

There is nothing in the language of the statute to indicate that the scope of the definition of property is to be limited to property rights existing when the statute was enacted. This conclusion must be coupled with the fact that the concept of property as used in the Bankruptcy Law has been held, over a long period of years, to include rights depending on contingencies. In Williams v. Heard, 1891, 140 U.S. 529, 11 S.Ct. 885, 35 L.Ed. 550, the predecessor bankruptcy statute provided that all of the "estate, debts, and effects" of the bankrupt were to be recovered for the creditors. This was

---

**3.** The statute also includes rights of action which could have been levied upon and sold under judicial process, or otherwise seized, impounded or sequestered. In the view we take of the case, any consideration of these qualifications is pretermitted.

said to embrace his whole property. The facts were that during the Civil War the bankrupts had paid extra insurance premiums to cover war risks created by Confederate ships sponsored by Great Britain. In 1871, the United States secured an international reparations award of 15 million from Great Britain to be distributed by Congress as it saw fit. Congress set up a commission to determine distribution of the fund in 1874, and the bankruptcy occurred in 1875. No steps were taken to recover an award for the extra premiums paid until 1882 when Congress expressly provided for such recovery, and the award was made in 1886. The question was presented of ownership of the award as between the assignee of the bankrupts and them individually, they having been discharged in 1877.[4] The court held that the bankrupts had at the time of bankruptcy a possibility, coupled with an interest, of recovering the premiums, and that such property within the meaning of the Act which had passed to the assignee of the bankrupts.

The case of In re Dorgan's Estate, S.D., Iowa, 1916, 237 F. 507 involved an Iowa will giving the residue to the wife for life, with "full power to use the same * * * as she may see fit," and at the wife's death, remainder to bankrupt of "all the proceeds * * * left." The petition in bankruptcy was filed during the lifetime of the wife. Under Iowa law, this will created a life estate in the wife, with a vested remainder, subject to divestment, in the bankrupt. The court held that the bankrupt's interest passed to the trustee, saying "Such interest is a property right—contingent, it is true, as to the amount and value thereof, and subject to be entirely defeated, but nevertheless a property right, the value of which may be in a way approximated by taking into account the age of the widow and the prospective necessities of her life."

The case of Kleinschmidt v. Schroeter, 9 Cir., 1938, 94 F.2d 707, presented a situation where the bankrupt was engaged in a joint mining venture, advanced part of his contribution to the venture, but defaulted on the rest. Under the joint venture agreement he thereby forfeited all interest in the venture, except the conditional right to a return of his prior contribution if the venture made a profit or was sold at a profit. The court held that the conditional right of the bankrupt to a return of his contribution passed to the trustee in bankruptcy by operation of § 70, sub. a.

See also Chandler v. Nathans, 3 Cir., 1925, 6 F.2d 725, which based the passing of an income tax refund claim pending when the bankruptcy petition was filed on the premise that it was a right of action arising from the unlawful taking or detention of property of the bankrupt within the meaning of § 70, sub. a(6) of the Act. And cf. In re Kepp Elec. & Mfg. Corp., D.Minn., 1951, 98 F.Supp. 51, a Chapter XI arrangement proceeding, where the debtor transferred various assets to a receiver, including all tax refunds due and owing the debtor from the United States government. The assignment of loss-carryback claims was prior to the end of the taxable year. The Commissioner of Internal Revenue maintained that the transfer of the refund claim was void as violating the Assignment of Claims Act. It was held that this Act did not apply to assignments which occur through operation of law, and that a Chapter XI transfer to a receiver occurs by operation of law. Apparently no question was presented as to whether the assignment might be invalid because of its being contingent, and there was no contest between the receiver and an assignee as distinguished from the government.

Thus it is that these authorities have considered contingent rights as property under the Bankruptcy Act. They are

4. Under the bankruptcy practice then in effect the bankrupts were required to make a conveyance of "all [their] estate, real and personal" to an assignee. This is to be compared with the present practice of all property of the bankrupt passing by operation of law to the trustee.

applicable and persuasive by analogy. We hold that the right to claim loss-carryback refunds under the circumstances of this case is property as that term is used in § 70, sub. a(5), notwithstanding that the claim is subject to adjustment in the event the taxpayer has other losses or earnings during the balance of the year, and the claim may not be filed until the end of the taxable year.[5] This right of action springs from and rests on the fact that the income taxes theretofore paid were paid subject to adjustment in the event of future losses, and are available for that purpose to the end of providing the refund. The right to adjustment is definite; the time for filing the claim is definite; only the amount of the refund is contingent and this meets the test of a possibility vested with an interest set out in Williams v. Heard, supra.[6]

Accepting that the inchoate right to the loss-carryback refund is "property", this leaves for decision whether it is property which the bankrupt "could by any means have transferred" within the meaning of § 70, sub. a(5) of the Bankruptcy Act. It is not contended that the contingent and defeasible nature of the refund claim prevents it from being transferable. Contingent property interests are, of course, assignable at common law, In re Landis, 7 Cir., 1930, 41 F.2d 700; In re Wright, 2 Cir., 1907, 157 F. 554, 18 L.R.A.,N.S., 193; see also 6 C.J.S. Assignments, § 12, and as our preceding discussion demonstrates, contingent interests have been held to pass to the trustee in bankruptcy. The bankrupts do contend, however, that since the Assignment of Claims Act, supra, renders null and void assignments of claims against the United States, the right to the loss-carryback refund could not be "transferred" under § 70, sub. a(5). As heretofore noted, the Third Circuit in Sussman accepted this argument as an alternative basis for its holding that the carryback refund did not pass to the trustee.

■ It is settled law that the passage of title to a claim against the United States from the bankrupt to the trustee is not such a transfer or assignment as is barred by the Assignment of Claims Act. This is the principle enunciated in the Kepp Elec. & Mfg. Corp. case, supra, of the non-applicability of this Act to transfers effected by operation of law, and is the progeny of Erwin v. United States, 1878, 97 U.S. 392, 24 L.Ed. 1065. The point of the reasoning of the Sussman case was that the Assignment of Claims Act would, on the other hand, prevent a transfer of the refund right prior to and aside from bankruptcy thereby rendering the right non-transferable within the meaning of § 70, sub. a(5).

■ It is our opinion however, that this conclusion falls in light of the established law that an assignment of a claim or right against the United States is enforceable between the parties to such assignment, in that the bankrupt and the assignee could have entered into an enforceable contract whereby the bankrupt would have been bound to pay over the refund proceeds once he had received them from the government. Martin v. National Surety Co., 1937, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; California Bank v. United States Fidelity & Guar. Co., 9 Cir., 1942, 129 F.2d 751; and Bank of California National Ass'n v. Commissioner, 9 Cir., 1943, 133 F.2d

5. A proration of the refund in the ratio of the losses before and after the filing date would be indicated in the event of losses after the filing date. Earnings after the filing date would simply reduce the amount of the refund to the trustee. The fact that the refund claim is unmatured, in the sense that the taxpayer may not file for it until the end of the taxable year, would not appear to prevent the claim from being "property" within § 70, sub. a(5). This is an everyday occurrence where notes due and accounts receivable at a future date pass to the trustee in bankruptcy.

6. The question under consideration has had the attention of the commentators since the Sussman decision. See Herzog, Bankruptcy Law, Modern Trends, Journal of the National Association of Referees in Bankruptcy, Vol. 36, p. 18 (January 1962); XVI Univ. of Miami L.Rev. 345 (1961); 110 Univ. of Penn.L.Rev. 275 (1961); 14 Stanford L.Rev. 380 (1962); and 40 Tex.L.Rev. 569 (1962).

428. Thus, at the date of bankruptcy, the Segals were possessed of a valuable property right, capable of being converted into money value. We feel that this was sufficient transferability to meet the requirement of § 70, sub. a(5).

The Sussman court relied on Matter of Ideal Mercantile Corp., 2 Cir., 1957, 244 F.2d 828, cert. denied, 1957, 355 U.S. 856, 78 S.Ct. 84, 2 L.Ed.2d 63, and Wooton v. United States, 1949, 86 F.Supp. 143, 114 Ct.Cl. 608, cert. denied, 1950, 339 U.S. 903, 70 S.Ct. 517, 94 L. Ed. 1333, in holding that a loss-carryback claim was not transferable. Ideal held that an assignment of a claim for refund of customs duties was not enforceable between the parties until the government allowed the claim, and hence that the assignment was not sufficiently "perfected" prior to bankruptcy to prevent it from being a voidable preference under § 60, sub. a of the Bankruptcy Act. 11 U.S.C.A. § 96, sub. a. The court did not deal with the meaning of transferability under § 70, sub. a(5), nor did the court suggest that the assignee could not have enforced his assignment once the refund had been paid by the government. The Wooton case, as applicable here, established no more than that the Assignment Act bars a direct suit by the assignee against the government.

■ Finally, we are of the opinion that the argument pressed here, and accepted in Sussman, proves too much. If the Assignment of Claims Act defeats the transferability of an inchoate claim for a loss-carryback refund, it should by the same logic render all tax claims against the United States non-transferable for Bankruptcy Act purposes. The Assignment Act would apply with equal force to all claims for tax refund, including those presently due and fixed in amount. They too must meet the transferability prerequisite of § 70, sub. a(5). Yet, it is established that the bankruptcy trustee succeeds to any accrued claim or right of action for tax refund the bankrupt may have against the government. 4 Collier, Bankruptcy ¶ 70.28[4], at 1250, and cases cited at note 27.[7] See also In re Goodson, S.D.Cal., 1962, 208 F.Supp. 837.

■ For the foregoing reasons, we hold that an inchoate right to receive a loss-carryback refund is "property", and that it is property which the bankrupt could "by any means have transferred" within the meaning of § 70, sub. a(5) of the Bankruptcy Act. Consequently, the refund proceeds belong to the trustee.

Affirmed.

---

7. Collier cites Chandler v. Nathans, 3 Cir., 1925, 6 F.2d 725, which held that a refund claim was a "rights of action * * * [for] the unlawful taking or detention of * * * property" within § 70a(6). This subsection contains no transferability requirement. The other cases cited by Collier do not specify whether the refund claim was deemed to pass to the trustee under § 70a(5) or under § 70a

(6). In most tax refund cases, the government is not disputing that the taxpayer is entitled to return of the overpayment. Consequently, the "unlawful * * * detention of * * * property" language of § 70a(6) seems inappropriate, and such claims fall more comfortably within the general language of § 70a(5).