In the Matter of John Joseph **DONLEY** d/b/a **Continental Restaurant**, etc., **Bankrupt.**
### No. 61 B 1788(2).

United States District Court
E. D. Missouri, E. D.
June 7, 1965.

Phoenix Indemnity Co., 243 N.C. 595, 91 S.E.2d 584 (1956).

**404**

Richard D. FitzGibbon, Jr., U. S. Atty., and Harold F. Fullwood, Asst. U. S. Atty., St. Louis, Mo., for United States.

Irl B. Baris, St. Louis, Mo., for trustee.

Jerome Kalishman, St. Louis, Mo., for bankrupt.

MEREDITH, District Judge.

This matter is pending on a petition of the United States of America for a review of an order of February 8, 1965, allowing a priority tax claim, No. 77, for $1,119.21. This claim was filed for the sum of $2,173.90 and that portion of it which was disallowed relates to penalties and post-bankruptcy interest, which the government offset against a claim for refund filed by the taxpayer and by the trustee for taxpayer. There is no dispute as to the facts. The law is relatively well settled on the points of law involved, except for a disagreement between the circuits as to whether or not the taxpayer or the trustee in bankruptcy is entitled to a claim for refund of taxes against the government. The Referee has followed the decision of the 5th Circuit in the case of Segal v. Rochelle, 336 F.2d 298 (1964). Certiorari was granted by the Supreme Court in this case on March 8, 1965, 380 U.S. 931, 85 S.Ct. 939, 13 L.Ed.2d 819, and as yet no decision has been handed down by that court. See a recent opinion of the 8th Circuit on post-bankruptcy interest. United States v. Kalishman, Trustee, 8 Cir., 346 F.2d 514, decided June 4, 1965.

This Court is of the opinion that the order of the Referee in Bankruptcy should be affirmed. Accordingly,

It is hereby ordered, adjudged and decreed that the order of February 8, 1965, of the Referee in Bankruptcy be and the same is affirmed.

It is further ordered that the memorandum opinion filed by the Referee be and the same is adopted as the opinion of this Court.

The opinion of Robert E. Brauer, Referee, follows:

On July 10, 1964, the United States of America filed its amended proof of priority tax claim No. 3, claiming $2,173.90 due as and for withholding taxes allegedly owed by bankrupt for the 4th Quarter, 1961. (This is Claim No. 77 filed against this estate.) The trustee filed his objections thereto on August 4, 1964. The amended claim, and objections thereto, were heard and submitted on September 14, 1964. The last brief of the parties was filed on November 12, 1964.

In his objections, the trustee alleges that the bankrupt is not justly and truly indebted to the United States in the amount of $2,173.90; that the amount of the claim is excessive; that the claim should be filed only for $1,156.66; and that it is excessive "in that it violates Sec. 57(J) of the Bankruptcy Act", and Sec. 6402 of the Internal Revenue Code.

The facts are not in dispute. Bankrupt filed a petition in bankruptcy on December 28, 1961. During the calendar year 1961, he was engaged in a restaurant business, operating in St. Louis County, Missouri, at two separate locations, under the name of Continental Restaurant and the name of John's Drive-In.

Curtis L. Mann was elected trustee in bankruptcy at the first meeting of creditors. On April 10, 1962, he filed with the office of the District Director, Internal Revenue Service, a claim for refund of income taxes paid by bankrupt for the

calendar year 1958, "as a carryback against loss sustained during calendar year 1961". Similar claims were filed for a refund of income taxes paid by bankrupt for each of the calendar years 1959 and 1960 because of the loss alleged to have been sustained by bankrupt in 1961. In each of the 3 separate claims, the trustee alleged that bankrupt's loss in 1961 was $57,420.67. In the claim relating to 1958, trustee alleged that bankrupt had paid an income tax of $2,725.73 on reported income of $11,825.60; in the claim relating to 1959, trustee alleged that bankrupt had paid an income tax of $2,791.93 on income reported of $11,999.82; in the claim relating to 1960, the trustee alleged that bankrupt had paid an income tax of $3,805.12 on income reported of $14,542.15. These claims were made under Sec. 172, Title 26, U.S.C.A., as amended.

Prior to the filing of the claims by the trustee, the United States, on January 23, 1962, filed its first proof of priority claim for taxes, alleging that bankrupt was indebted to it in the total sum of $10,520.95, the claim reading in pertinent part, as follows:

"Income 1960 (Ret. Ck)

| | |
|---|---:|
| Penalty | 37.45 [1] |
| Withholding 3 Q 61 | 6,103.12 |
| Interest to 12/28/61 | 57.55 |
| Withholding 4 Q 61 | 2,891.40 |
| FUTA 1961 (Final) | 1,431.43 |
| | $10,520.95" |

On April 20, 1962, the United States filed (as it is denominated) its amended Claim No. 1. The liabilities alleged to be due by bankrupt to it are the same as alleged in the claim just referred to. The amendment only related to the addition, in this claim, of allegations as to the dates upon which tax liens arose in respect of the various items making up the claim.[2]

In May, 1963, the trustee received Notices of Adjustment from the District Director of Internal Revenue, notifying him that because of bankrupt's net operating loss in 1961, for the year 1958 there had been an overassessment made of bankrupt's income taxes, in the amount of $2,725.73, with interest of $14.56, totaling $2,740.29; that for the year 1959, there had been an overassessment of $2,791.93, with interest of $11.47, totaling $2,803.40; and that for the year 1960, there had been an overassessment of $3,805.12, with interest of $15.48, totaling $3,820.60. The total of the overassessments and interest is $9,364.29.

This sum was not paid to the trustee, nor to the bankrupt. Rather, the United States appropriated it in the following manner:

a) To satisfy the $37.45 penalty claimed to be due on account of the returned check (item 1 on its claim);

b) To satisfy the $6,103.12 withholding and social security tax liability, and pre-bankruptcy interest of $57.55 thereon, for the third quarter 1961 (items 2 and 3 on its claim);

c) To partially satisfy the $2,891.40 withholding and social security tax liability for the fourth quarter 1961 (item 4 on its claim), applying $717.50 against this liability;

d) To satisfy the $1,431.43 FUTA tax liability for 1961 (last item on its claim).

These credits total $8,347.05. The remainder, $1,017.24, was appropriated as follows:

a) $915.47, to satisfy a penalty for bankrupt's failure to file a withholding tax return for the 3rd Quarter, 1961;

b) $101.72, to satisfy a penalty for bankrupt's failure to pay monies withheld from employees' salaries

---

1. In the claim, it is alleged, as to this item, that a *tax lien* arose on December 4, 1961.

2. Liens in respect of all of the items are alleged to have arisen after bankruptcy in this claim.

to the Federal Reserve Bank and secure a depository receipt therefor; and

c) $0.50, to satisfy post-bankruptcy interest on bankrupt's 3rd Quarter, 1961, tax liability.

On July 10, 1964, the United States filed its final amended claim, for $2,173.-90, this claim being the claim to which trustee objected. (Earlier, on June 3, 1963, the Government filed a claim for $2,222.09.) The claim alleges that this is bankrupt's liability for withholding taxes due for the 4th Quarter, 1961.

The trustee contends that the United States should have appropriated all of the carry-back refunds to satisfy tax (as distinguished from penalties) liability only, together with pre-bankruptcy interest on the liability for withholding taxes due for the 3rd Quarter, 1961; he contends that the United States is precluded, by reason of Section 57, sub. j of the Bankruptcy Act from appropriating any of the refund to the payment of penalties, and is precluded by City of New York v. Saper (1949) 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, from appropriating any of it to post-bankruptcy interest.

The United States contends, however, that its appropriation, to satisfy penalties and post-bankruptcy interest, is proper, contending that the loss carry-back refunds are not "property" which passed to the trustee under Section 70, sub. a of the Bankruptcy Act, Sec. 110, sub. a, Title 11 U.S.C.A., but are "property" acquired after bankruptcy belonging to the bankrupt.

Neither party claims that bankrupt's *tax* liabilities, as alleged in the first claim filed by the United States, are not proper; nor does either party claim that the amounts of the loss carry-back refunds are not proper. The sole issue is whether the Government could properly apply any of such refunds to satisfy penalty liabilities or post-bankruptcy interest liability.

### THE LAW

Section 57, sub. j of the Bankruptcy Act, supra, Section 93, sub. j, Title 11 U.S.C.A., provides

"Debts owing to the United States * * * as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law."

The Government did not prove, at the hearing, that it sustained any pecuniary loss as the result of bankrupt's conduct, out of which the various penalties arose. And, the Government does not claim that any of the loss carry-back refunds was appropriated to satisfy any such pecuniary loss.

However, the Government claims that it has the right, notwithstanding Sec. 57, sub. j, to satisfy the penalties and post-bankruptcy interest, previously referred to, because the refunds were not the property of the trustee but were the property of the bankrupt, acquired after bankruptcy, and that, as a result, Sec. 57, sub. j has no application. The Government relies on In re Sussman (3 Cir., 1961) 289 F.2d 76, and Fournier v. Rosenblum (1 Cir., 1963) 318 F.2d 525, as its authority. And, indeed each of these cases holds that loss carry-back refunds arising by reason of a net operating loss in the year in which the bankruptcy petition is filed (where such petition is filed prior to the end of the taxable year), is not "property", within the meaning of Section 70, sub. a of the Bankruptcy Act, supra, which passes to a trustee in bankruptcy.

The 5th Circuit Court of Appeals has disagreed, however, in a more recent opinion, Segal v. Rochelle (5 Cir., 1964) 336 F.2d 298, in which it holds that the right to a refund of income taxes, because of a net operating loss sustained during the year of the bankruptcy, under

Section 172, Title 26, U.S.C.A., supra, is "property" within the meaning of Section 70, sub. a, supra, and does pass to a trustee in bankruptcy, and that the Assignment of Claims Act, 31 U.S.C.A. § 203 does not warrant a contrary conclusion.

Comments upon and criticisms of the Sussman and Fournier decisions are to be found in Bankruptcy Law—Modern Trends (Jan., 1962) Vol. 36 Jrnl. Natl. Assoc. Referees in Bankruptcy, pp. 18–20; in Windfall for Bankrupts: Loss Carryback Claims DO NOT Vest in Trustee (Oct., 1962) Vol. 36 Jrnl. Natl. Assoc. Referees in Bankruptcy, pp. 116–118; and in Tax Credits in Bankruptcy Proceedings (Jan., 1965) Vol. 39 Jrnl. Natl. Assoc. Referees in Bankruptcy, pp. 5–8.

■■ I have given careful consideration to these opinions, and to the three articles, and to the authorities discussed in all. I am of the opinion that Segal v. Rochelle, supra, is decided correctly. Accordingly, I hold that the claims for carryback refunds were "property" which vested in the trustee in bankruptcy under Sec. 70, sub. a (5) of the Bankruptcy Act.[3]

If this be so, can the Government, in view of Sec. 57, sub. j, supra, still apply any part of the refunds to penalties or to post-bankruptcy interest? Section 6402(a), Title 26 U.S.C.A., provides that the United States may credit the amount of an overpayment against any liability in respect of an internal revenue tax on the part of the person who made the overpayment.

■ In my opinion, a penalty, and interest, are embraced within the phrase "any liability in respect of an internal revenue tax", as found in Section 6402 (a), though the trustee argues to the contrary in his brief concerning penalties. Section 6671(a), Section 6601(e) and (f) (1), Title 26 U.S.C.A.

Nevertheless, Sec. 57, sub. j precludes, where bankruptcy intervenes between the tax liability and the credit of any overpayment against it, any credit against a penalty. For, to permit such a credit, is to permit the allowance of the Government's claim for the remaining unpaid tax liability in a correspondingly increased amount, thereby correspondingly depleting monies available to general, unsecured creditors, and thereby placing the burden of those penalties on innocent unsecured creditors, which is what Sec. 57, sub. j is intended to prevent. Simonson v. Granquist (1961) 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557. Here, the court says:

"For it (Sec. 57, sub. j) plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estate of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors." 369 U.S. loc. cit. 40, 41, 82 S.Ct. loc. cit. 538, 539.

Accordingly, the Government should not have credited any portion of the refunds against penalties exacted against

---

3. Future interests and contingent claims are assignable in Missouri. Bank of Moberly v. Meals (1928) 222 Mo.App.

862, 5 S.W.2d 1113; Bock v. Whelan (Mo.Sup., 1930) 30 S.W.2d 607.

bankrupt.[4] Nor should it have credited post-bankruptcy interest accruing on any of bankrupt's liabilities, as such interest is not allowable on tax claims in bankruptcy. City of New York v. Saper, supra. All of the refunds, totaling $9,364.29 (which includes interest) should have been credited to bankrupt's tax (as here distinguished from penalty) liabilities, and the $57.55 pre-bankruptcy interest on part of that tax. This correct application can be made by allowing the Government's tax claim for the proper sum for which it should have been filed. In re Tom's Villa Rosa, Inc. (D.C., Conn., 1961) 198 F.Supp. 137.

Accordingly, the Government's claim, Claim No. 77, will be allowed, by a separate order being entered this date, as a tax priority claim under Sec. 64, sub. a (4) of the Bankruptcy Act (Sec. 104, sub. a(4), Title 11 U.S.C.A.), in and for the sum of $1,119.21.

Separate findings of fact and conclusions of law, in addition to those made herein, will not be filed.

4. And, this is true whether any of those penalties was secured by a lax lien in existence as of bankruptcy. Simonson v. Granquist, supra. (Note that the Government in its first claim alleges that the bad check penalty of $37.45 was secured by a tax lien arising prior to bankruptcy.)