In the Matter of David SUSSMAN and Charles Sussman, individually and as co-partners, trading as Charles Company, Bankrupts.

Melvin Talus, John T. Durnin and Harry S. Mayer, Trustees, Appellants.

No. 13398.

United States Court of Appeals Third Circuit.

Argued Feb. 7, 1961.

Decided April 3, 1961.

Alexander N. Rubin, Philadelphia, Pa. (Goff & Rubin, Philadelphia, Pa., on the brief), for appellants.

William Shapiro, Philadelphia, Pa., for appellees.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The bankrupt, Charles Sussman, was a partner in a business which sustained heavy losses in the early months of 1956. Sussman individually, as well as the partnership, filed a petition in bankruptcy on June 7, 1956.

For the calendar years 1954 and 1955, Sussman had paid income taxes pursuant to joint returns filed by him and his wife. Mrs. Sussman had no income. The 1956 business reverses, which caused

Sussman's bankruptcy in June, also resulted, at the end of the year, in a situation in which a proper income tax return for the calendar year would show a substantial net loss. Accordingly, in March, 1957, the trustee in bankruptcy filed an application on behalf of the bankrupt for a tentative carry-back adjustment for the years 1954 and 1955 as justified by the bankrupt's demonstrated substantial net operating loss for the calendar year 1956. In July, 1957, this claim was allowed and a refund check was delivered to the trustee. Thereafter, the bankrupt and his wife sought in the bankruptcy proceeding to compel the trustee to surrender this refund to them. The referee so directed and the district court affirmed the referee's order. This appeal followed.

The controlling provisions of the Bankruptcy Act appear in Section 70, sub. a, 11 U.S.C.A. § 110, sub. a. That section provides, in relevant part,[1] as follows:

"(a) The trustee of the estate of a bankrupt * * * shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title * * * to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: * * * (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property * * *."

It is not disputed that the "rights of action" which pass to the trustee under the above quoted language of Section 70, sub. a include accrued and immediately determinable and enforceable claims for tax refunds or rebates which the bankrupt himself had or could have asserted against the United States at the time his petition in bankruptcy was filed. Chandler v. Nathans, 3 Cir., 1925, 6 F.2d 725; cf. Hoffman v. United States, D.C.S.D. N.Y.1940, 32 F.Supp. 939. But in this connection it is important to keep in mind that such a right of action for a tax refund is created and defined by the statutes in which the United States authorizes a taxpayer to assert such a claim. In the present situation the statutory basis of a loss carry-back claim, as the court below has properly pointed out, is a taxpayer's economic experience for a unit of time, an entire taxable year. This is clear because the net operating loss upon which any claim for a carry-back must be based is the excess of allowable deductions over the taxpayer's gross income as computed in a tax return for a taxable year. Int.Rev.Code § 172 (c), 26 U.S.C.A. § 172(c). Thus, the statutory scheme precludes the existence of any carry-back claim until the end of a taxable year.

It has already been stated that Sussman's taxable year was the calendar year. There is no provision in law that bankruptcy terminates a taxable year. Therefore, when Sussman filed his bankruptcy petition he had no "right of action"

---

1. In the court below there seems to have been some consideration of other provisions of Section 70, sub. a, particularly the provisions added to Section 70, sub. a by the Chandler Act to prevent windfalls to a bankrupt during the months immediately after bankruptcy. But those provisions, as they appear in clause (7) of Section 70, sub. a and in the unnumbered paragraphs at the end of the section, do not cover the present situation. They embrace, first, contingent interests in real estate which become assignable by the bankrupt within six months after bankruptcy; second, bequests, devises and inheritances which vest in the bankrupt within six months after bankruptcy; and, third, any property, held in estate by the entirety and vested in the bankrupt and another at the time of bankruptcy, which within six months thereafter becomes transferable by the bankrupt alone. The present case obviously is not within either the first or the second category. The third category does not embrace the present claim because the spouses had no vested right to a refund when the bankruptcy petition was filed.

against the United States for the trustee to acquire under Section 70, sub. a(5) or (6).

More generally, paragraph 70, sub. a (5) provides that the trustee shall acquire the "title" of the bankrupt to all "property" which is subject to assignment by the bankrupt or levy against him when the petition is filed. Of course, this concept of "title" to "property" connotes an ownership interest in some res, whether that res shall be corporeal property or a chose in action. In June, 1956, Sussman may well have contemplated the likelihood that he would be able to assert a loss carry-back claim against the United States within a few months. But he could point to no existing fund and to no existing cause of action in which he had any legal or equitable interest.

█ Perhaps this June expectation that a right to a refund would arise six or seven months later can be described as a contingent claim against the United States. But no such formulation can enlarge or in any way alter the limiting terms and conditions upon which the sovereign has agreed to recognize such a claim. The United States has not agreed that such a contingent claim against it can be assigned or attached, as Section 70, sub. a(5) requires. Rather, the transferability of claims against the United States has been narrowly restricted by the Assignment of Claims Act, 31 U.S.C.A. § 203. Certainly, in June, 1956, Sussman's expectation of a future claim against the government was not assignable, even as between Sussman and any assignee. Cf. Matter of Ideal Mercantile Corp., 2 Cir., 1957, 244 F.2d 828, certiorari denied 1957, 355 U.S. 856, 78 S.Ct. 84, 2 L.Ed.2d 63; Wooton v. United States, 1949, 86 F.Supp. 143, 114 Ct.Cl. 608, certiorari denied 1950, 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333.

█ We find the conclusion inescapable that in June, 1956 Sussman had no right of action against the United States and no vested or transferable property in his anticipated claim against the United States, within the meaning of Section 70, sub. a of the Bankruptcy Act.

The unfortunate result of this is, as the referee pointed out, "a windfall to the bankrupt at the expense of the creditors". The fact that the very business losses which destroyed normal capacity to pay creditors have led to the tax rebate, makes it particularly unfair that this fund should be beyond the reach of the bankrupt's creditors. Thus, the normally satisfactory provisions of Section 70, sub. a have inequitable consequences in this very special situation. But we cannot correct this. Such a matter requires a legislative solution.

The judgment will be affirmed.