Henry FOURNIER, Appellant,

v.

Miriam G. ROSENBLUM, Trustee, Appellee.

In the Matter of Henry FOURNIER, d/b/a Henry's Men's Wear, Bankrupt.

No. 6091.

United States Court of Appeals First Circuit.

June 12, 1963.

Clifford J. Ross, Manchester, N. H., with whom Eaton, Eaton & Ross, Manchester, N. H., was on brief, for appellant.

Meyer Green, Manchester, N. H., with whom Green, Green, Romprey & Sullivan, Manchester, N. H., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

The appellant, Henry Fournier, to be referred to hereinafter as the bankrupt, paid income taxes for the calendar years 1958 and 1959 pursuant to joint returns filed by him and his wife. In 1960 he suffered financial reverses and on December 6 of that year he filed a voluntary petition in bankruptcy with the clerk of the United States District Court for the District of New Hampshire. The first meeting of creditors was held on December 21, 1960, when the appellee's predecessor was appointed trustee.

On June 8, 1961, the bankrupt and his wife filed their joint income tax return for the calendar year 1960 and with their return filed application for a tentative carryback adjustment of their taxes for the years 1958 and 1959 based on the bankrupt's net operating loss for the calendar year 1960. The bankrupt's claim was allowed on June 29, 1961, and he received a refund check from the United States in the amount of $2,800.52. The bankrupt's wife disclaimed any interest in the amount of this refund but his trustee in bankruptcy claimed it and filed a petition in the bankruptcy proceeding for an order directing the

bankrupt to turn the amount of the refund over to her for the benefit of creditors. The Referee so directed, the United States District Court for the District of New Hampshire affirmed without opinion and this appeal followed.

This case is on all fours with In re Sussman, 289 F.2d 76 (C.A. 3, 1961), in which the court regretfully held for the bankrupt. A factual difference between that case and this is that in Sussman the petition was filed about the middle of the bankrupt's taxable year in which he suffered his recoupable loss, whereas in this case the petition was filed toward the end of that year.[1] Thus in Sussman there was a longer period of uncertainty whether the bankrupt's loss would survive to the end of the calendar and his taxable year. Nevertheless, in this case as in that, the prospective loss deduction was subject to an element of uncertainty and incalculability at the time the petition in bankruptcy was filed. The difference is merely one of degree. The question in both cases is whether the bankrupt's expectancy as of the date of the filing of his petition in bankruptcy of a net loss carryback refund constituted either "property" or a "right of action" within the meaning of § 70, sub. a (5) and (6) of the Bankruptcy Act as it now stands. 52 Stat. 880, 11 U.S.C. § 110, sub. a (5) and (6). The immediate question for us is whether or not to follow the Third Circuit in the Sussman case.

Section 70, sub. a(5) and (6) insofar as material provides:

"The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * (5) prop-

---

1. The cases also differ quite immaterially in that in Sussman the trustee applied for and received the loss carryback refund and the bankrupt sought to recover it from the trustee, whereas here the situation is reversed.

erty, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: * * * (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; * * *".

Obviously the critical date is the date of the filing of the petition in bankruptcy and equally obviously what vests by operation of law in the trustee in bankruptcy as of that date is the bankrupt's "title" to "property" or "rights of action." The first and basic inquiry, therefore, is whether the bankrupt's prospective, indeed expectant, right to a net loss carryback refund falls into either one of these categories. We think it does not.

■ Since the provision of the Internal Revenue Code of 1954 authorizing net operating loss carrybacks (§ 172) does so on the basis of the taxpayer's experience for a taxable year, the right to a loss carryback refund does not arise until the end of the taxable year in which the loss occurs. Thus it cannot be said that a bankrupt's losses create a right to a carryback as soon as they occur, even though the right be unenforceable until the end of the bankrupt taxpayer's accounting period, for it is evident that a taxpayer who sustains a net operating loss for a portion of his taxable year may earn or acquire, as by winning a large bet or holding a winning sweepstakes ticket, enough income during the balance of the year to offset or reduce his loss. As the court pointed out in

Sussman, 289 F.2d at page 77, " * * * the statutory scheme precludes the existence of any carry-back claim until the end of a taxable year." Therefore no claim, but only a prospect or expectation of a claim, to a net loss carryback refund can arise until the end of a taxable year, and the prospect, hope or expectation of a claim is not a right of action.[2]

■ Nor is the prospect that a right of action may arise "property." For, again as the court pointed out in Sussman (289 F.2d at page 78), the concept of "title" to "property" connotes a definable ownership interest in some res, whether that res be corporeal property or a chose in action. Here, however, there was no res or chose in action in existence on the date of the filing of the petition in bankruptcy. At that time the bankrupt could point to no existing fund and to no existing right in which he had any legal or equitable interest.

Since we hold that the bankrupt's prospective claim was neither "property" nor a "right of action" within the meaning of § 70, sub. a (5) of the Act, we do not need to consider whether that prospective claim could by any means be transferred by him or levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered, in conformity with the further requirements of that subsection of the statute.

We regret this result as much as did the court in Sussman. But, as in Sussman, we think the remedy lies with Congress.[3]

The order of the District Court is vacated and the case is remanded to that Court for further consistent proceedings.

2. *A fortiori*, there is no "right of action" of the types specifically enumerated in § 70, sub. a(6) of the Act.

3. Legislative action might consist in amending the Internal Revenue Code to provide that bankruptcy, like death, terminates the taxable year. Or it might consist in further amendment of § 70, sub. a of the Bankruptcy Act along the lines of the 1938 amendment of that section by the Chandler Act, 52 Stat. 879, to correct a similar statutory deficiency with respect to contingent interests in property. See In re Baker, 13 F.2d 707, (C.A.6, 1926), cert. denied Shoun v. Baker, 273 U.S. 733, 47 S.Ct. 242, 71 L. Ed. 864 (1926); Dioguardi v. Curran, 35 F.2d 431 (C.A.4, 1929).