**In the Matter of Paul GIGNAC, Bankrupt.**

**No. 43662.**

United States District Court
N. D. New York.

Aug. 21, 1963.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., O'Hear W. Fraser, Atty., Internal Revenue Service, for petitioner, United States, Frank A. Dziduch, Asst. U. S. Atty., of counsel.

Geraghty & Geraghty, Gloversville, N. Y., for trustee, Michael T. Nershi.

JAMES T. FOLEY, Chief Judge.

This petition for review, as presented by the government in its briefing, poses only questions of law. The amount of money that would come to the government coffers if it is successful in the review is minimal, but I will assume—although frankly there is no persuasive showing to so conclude—that the decision of the Referee may have serious impact on the administration of the Internal Revenue Code provisions in their application that may affect the collection of substantial revenue in bankruptcy matters involving this same issue.

First, it is disconcerting to have the government in this review present a legal authority asserted to be directly in point on the question and admittedly not presented to the Referee. The case is In re Sussman, 3 Cir., 289 F.2d 76, (decided April 13, 1961). The Referee's decision is dated February 6, 1962. The government, with its manpower and research resources, should seldom be in this position, although I realize its lawyers are human and fallible and may miss pertinent citations just as busy Referees and Judges may. I would think, however, that when it is discovered that the briefing before the Referee did not call his attention to an important ruling the interests of justice and efficiency in these matters should give good reason to request reconsideration. Such procedure to so request and such power granted to the Referee to reconsider are settled in the law. (2 Collier, 14th Ed. pg. 1426; Matter of Pottasch, 2 Cir., 79 F.2d 613; Castaner v. Mora, 1 Cir., 234 F.2d 710; American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 2 Cir., 280 F.2d 119, 122).

However, despite this lapse, it is my judgment that the Sussman authority now mainly relied upon for reversal is clearly distinguishable from the facts here. The Sussman ruling by stated expression therein was made reluctantly, and it was followed again with regret to the same result in similar factual situations by the First Circuit in Fournier v. Rosenblum, 1 Cir., 318 F.2d 525. The Sussman decision is the subject of a persuasive and critical analysis by Referee Asa S. Herzog in the Journal of the Na-

tional Association of Referees in Bankruptcy, Vol. 36, January 1962, pg. 18. However, in the Sussman decision the writing of Judge Hastie throughout cautions that it be confined to a carryback loss claim, describing the issue as one "in this very special situation". (289 F. 2d pg. 78). Judge Hastie considers it undisputed, citing Chandler v. Nathans, 3 Cir., 6 F.2d 725, that Section 70, sub. a of the Bankruptcy Act passes "rights of action" to the Trustee that include accrued and immediately determinable and enforceable claims for tax refunds and rebates which the bankrupt himself had or could have asserted against the United States at the time the bankruptcy petition was filed. (In re Sussman, supra, 289 F.2d pg. 77; see also 4 Collier on Bankruptcy, pg. 1250). There is a flexibility of interpretation indicated both in Sussman and Fournier that it is sufficient for the trustee to acquire title if he can point to a res, existing fund or chose in action in which the bankrupt had a legal and equitable interest when the bankruptcy petition was filed. Here, the estimated tax payment of $236.11 made in 1960 by the bankrupt as a tax payment, in my judgment, reasonably fits into these important features of an existing res or fund. Therefore, I agree with the reasoning and conclusion of the Referee that it was an asset of the bankrupt's estate, and should be applied solely against the payment of the $568.88 personal income tax deficiency for 1959.

I am not impressed at all by the argument of the government that whether the estimated tax payment is an asset of the bankrupt estate or not it must first be applied against the taxpayer's self-employment tax liability of $157.94. In this instance, the financial benefit to the government would be slight, but such fact, of course, would not be controlling. The important basis for my decision in this respect is that the government seems to be cutting the corners too close to ease its burden of tax collection. There seems to me to be substantial difference in the nature of a self-employment tax and an income tax. Int.Rev.Code 1954, §§ 701–

2000, 26 U.S.C.A. pg. 98). The taxing statute and regulations pursuant thereto at times made solely for tax collection efficiency, cannot prevail over the provisions of the Bankruptcy Act enacted with the dominant purpose to collect all assets and distribute them as fairly and equitable as possible in accordance with the Act, and for the best interests of all creditors. (See In re John Horne Company v. Klein, Trustee, 7 Cir., 220 F.2d 33, 35).

The petition to review is dismissed and the order of the Referee is confirmed in all respects.

It is so ordered.