**In re Dennis Laverne RASH and Deborah Elnora Rash, Debtors.**

**In re Ronald Dean KNIGHT and Penny Louise Knight, a/k/a Penny Louise Shaeffer, Debtors.**

**In re Charles Edward COFIELD and Carolyn Lavern Cofield, Debtors.**

**Bankruptcy Nos. 81–21139, 81–20788 and 81–20681.**

United States Bankruptcy Court, D. Kansas.

Aug. 4, 1982.

Dennis E. Mitchell, of Laurence M. Jarvis, Chartered, Kansas City, Kan., for debtors, Rashes and Knights.

Elmer C. Jackson, Jr., Kansas City, Kan., for debtors, Cofields.

Donald E. Bucher, Trustee, Kansas City, Kan., trustee in estates of Rash and Knight.

Chris Henry, Trustee, Kansas City, Kan., trustee in estate of Cofield.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

These matters come on for determination of the debtors' applications for turnover of income tax refunds held by the trustees. The Rashes and the Knights are represented by Dennis E. Mitchell of Laurence M. Jarvis, Chartered; and the trustee of their estates is Donald E. Bucher. The Cofields are represented by Elmer C. Jackson, Jr.; and the trustee of their estate is Chris Henry.[1]

### FINDINGS OF FACT

The facts in each of the above captioned cases are not in dispute. There is also no dispute that jurisdiction and venue properly lie in this court.

The *Rashes* filed a Chapter 7 petition on November 23, 1981. In mid-February, 1982, they filed their 1981 federal income tax

---

1. *A companion case, In re Earl Dean Huffman, Sr. & Teresina Louise Huffman f/k/a Teresina Louise Wright, 81–20947, is now moot. The Huffmans had filed an application for turnover under the mistaken belief that the trustee had the refund. Subsequently the debtors received the refund through the mail. Thereupon they* filed an application to withdraw their application for turnover. The court, by order of June 3, 1982, gave the trustee, Donald E. Bucher, until June 14 to object to the application to withdraw. No objection was forthcoming, so the debtors' application to withdraw was sustained as of June 14, 1982.*

return. A refund check for $895.00 was mailed to the trustee. They filed an application for turnover on May 3, 1982. They were discharged on May 20, 1982.

The *Knights* filed a Chapter 7 petition on August 19, 1981. They were discharged on January 21, 1982. Sometime thereafter, they filed their 1981 federal income tax return. Their estate was closed on February 9, 1982. Thereafter, the trustee received a refund check for $575.00. On April 21, 1982, they filed an application for nunc pro tunc order of turnover.

The *Cofields* filed a Chapter 7 petition on July 6, 1981. They were discharged on January 22, 1982. Sometime thereafter they filed their 1981 federal and state income tax returns. On February 8, 1982, their estate was closed. Thereafter, the trustee received a federal refund check for $480.00 and a state refund check for $108.00. On March 20, 1982, the debtors filed a motion for turnover.

## ISSUE

WHETHER INCOME TAX REFUNDS ATTRIBUTABLE TO EXCESSIVE WITHHOLDINGS IN THE SAME YEAR IN WHICH THE BANKRUPTCY PETITION WAS FILED AND RECEIVED IN THE FOLLOWING YEAR ARE PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541.

## CONCLUSIONS OF LAW

The debtors contend that the refunds are not property of the estate because at the time of their petitions, they had no vested right to the refunds. Not until December 31, 1981, the close of the tax year, did their right to the refunds become certain. The trustees contend that in spite of the contingent nature of the refunds at the time of the petition, the refunds are property of the estate to the extent that the refunds are attributable to excessive withholding from

January 1, 1981, to the respective dates of the petitions. Thus, the trustees contend that they are entitled to a pro-rata share of the refunds.[2]

11 U.S.C. § 541(a) states that the commencement of a case under § 301 (voluntary petitions) creates an estate and that such estate is comprised of all *"legal or equitable interests of the debtor in property as of the commencement of the case."* The legislative history notes that this section encompasses more property than its predecessor, § 70a(5) of the Bankruptcy Act; that the right to a tax refund is property of the estate; and that the holding of *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) remains viable under the Code. H.Rep.No.595, 95th Cong., 2d Sess. 367; S.Rep.No.989, 95th Cong., 2d Sess. 82; U.S.Code Cong. & Admin.News 5787, 5868, 5963, 6323 (1978).

In *Segal, supra*, the bankrupts filed their petition in 1961. They experienced business losses in 1961, which when offset against business income for 1959 and 1960, resulted in a loss carryback refund for the 1961 tax year. There the bankrupts raised an argument identical to the debtor's argument herein. They argued that there was no right to file or receive a refund prior to the close of the 1961 tax year and thus, the refund was not property of the estate at the time of their petition.

The referee denied the bankrupts' application for turnover and the District Court and Circuit Court of Appeals for the Fifth Circuit affirmed. The Supreme Court granted certiorari to resolve a conflict between the Fifth Circuit ruling and rulings of the First and Third Circuits. See *Fournier v. Rosenblum*, 318 F.2d 525 (1st Cir. 1963) and *In re Sussman*, 289 F.2d 76 (3rd Cir. 1961) where the courts held that a contingent right to a loss carryback refund at the time of the petition was not property of the estate.

---

**2.** *The trustees would apply the same formula used by Judge Pusateri in In re Koch, 14 B.R. 64 (Bkrtcy.D.Kan.1981):*

· *Refund amount* × $\dfrac{\text{Number of calendar days between 1/1/81 and the date of the petition, inclusive.}}{\text{365 days}}$

The Supreme Court affirmed the Fifth Circuit ruling, finding that such a contingent right to a loss carryback refund was property of the estate. The Court reasoned that given the fresh start policy of the Act, the bankrupt should be free after the date of filing to accumulate new wealth; but that the loss carryback refund was *"sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5)."* *Segal, supra,* 382 U.S. at 380, 86 S.Ct. at 515.

The Court noted that on the date of the petition, two elements pointed toward the realization of the refund at the end of the tax year: taxes had been paid on net income within the prior 3 years and the bankrupts' business exhibited a net operating loss in the current year. However, the court reasoned that the contingency or uncertainty of said refund, given the possibility that by the end of the year the business could net a profit, was of no consequence. As further stated in *Segal, supra,* at 380, 86 S.Ct. at 515:

*"... postponed enjoyment does not disqualify an interest as 'property.' That earnings by the bankrupt after filing the petition might diminish or eliminate the loss-carryback refund claim does further qualify the interest, but we have already noted that contingency in the abstract is no bar and the actual risk that the refund claims may be erased is quite far from a certainty."*

The debtors would distinguish *Segal* on the basis of the different types of refunds involved, income tax refunds herein, and a loss carryback refund in *Segal.* This Court finds that there is a dubious distinction since in both cases, the right to the refunds is dependent on circumstances arising in the year of the petition, the existence of business losses or the existence of excessive income tax withholdings. Also in both cases, the right to the refunds and the amount of the refunds becomes certain at the close of the tax year.

Moreover, *Segal* has been consistently followed and applied to Code cases involving income tax refunds. See *Matter of Doan,* 672 F.2d 831 (11th Cir. 1982); *In re Koch,* 14 B.R. 64 (Bkrtcy.D.Kan.1981); *In re Devoe,* 5 B.R. 618 (Bkrtcy.S.D.Ohio 1980); *Matter of Nichols,* 4 B.R. 711, 6 B.C.D. 597 (Bkrtcy.E.D.Mich.1980).

This Court finds, therefore, that the income tax refunds herein are property of the debtors' estates. However, only that portion of the refund attributable to pre-petition withholding is properly included in the estate. *Segal* made clear that post-petition property inures to the benefit of the debtors' fresh start. *Segal* also indicated that a pro-rationing of the refund was proper. In footnote 5, the court stated:

*"So far as losses by the bankrupt after filing but before the year's end might increase the refund—a situation not claimed to be present in this case—the Court of Appeals suggested '[a] proration of the refund in the ratio of the losses before and after the filing date ... "*

Thus far, courts have prorated refunds solely on the basis of the number of calendar days before and after the petition, rather than in the ratio of actual excessive withholding before and after the petition. Thus, in *In re Koch, supra,* at pg. 66, the court found the trustee entitled to 364/365 of the refund where the bankruptcy petition was filed on December 30th. Accord, *In re Devoe, supra,* at pg. 620; *Matter of Doan, supra,* at pg. 832.

The debtors herein argue that a calendar day proration could result in an inequitable division of the refund. A calendar day formula is based on the premise that excessive withholding is proportional per day. Yet a change in income, marital status, or number of dependents would result in unproportional withholding. For example, where a debtor works only the first 6 months of the year, all of the excessive withholding would occur during those months. A debtor who filed a petition during the latter six months of the year would not be entitled to any of the refund, if the refund were proportioned on a calendar day

basis. Thus, calendar day prorationing can result in a windfall to the trustee or the debtor, depending on the circumstances of the case.

The Court finds merit in the debtors' objection to a strict calendar day prorationing. However, as a practical matter, calendar day prorationing is the most efficient method to determine how much the estate is entitled.

Accordingly, the trustees are entitled to:
328/365 of the Rash refund;
231/365 of the Knight refund; and
187/365 of the Cofield refunds.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.