In re James Ross HARTLEY, Sharon
Lee Hartley, dba Hartley
Trucking, Debtors.

James Ross HARTLEY, Indiv. & dba
Hartley Trucking, Plaintiff,

v.

Quentin M. DERRYBERRY, II,
Trustee, Defendant.

Bankruptcy No. 81–01855.
Adv. No. 83–0153.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 27, 1985.

**160**

Philip R. Joelson, Toledo, Ohio, for plaintiff.

Quentin M. Derryberry, II, Wapakoneta, Ohio, trustee/defendant.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the court upon the parties agreement for a decision based upon an agreed statement of facts. The plaintiff seeks to reclaim funds from the Trustee/Defendant, Quentin M. Derryberry, II, who claims that the money in question is property of the estate pursuant to 11 U.S.C. § 541.

The plaintiff contends that a check in the amount of $8,010.23 made payable to "Jim Hartley dba" issued by The Union Oil Co. is not property of the estate pursuant to 11 U.S.C. § 541 due to the fact the check was issued after the date his Chapter 7 petition was filed. The court finds that the check was a refund of overcharges for fuel used in the debtor's trucking business during a period of time prior to his bankruptcy filing and is therefore "sufficiently rooted in the pre-bankruptcy past" so that the court must find these funds are property of the estate and that plaintiff's complaint for reclamation must be denied.

## STATEMENT OF FACTS

The plaintiff/debtor owned and operated "Hartley Trucking Co." which commenced operation in the fall of 1974. The plaintiff and his wife filed a Chapter 7 bankruptcy on September 8, 1981. On or about December 15, 1982 The Union Oil Company of California mailed a check in the amount of $8,010.23 payable to "Jim Hartley dba" 401 Shepherd Rd., Carey, Ohio 43316 (which was the plaintiff's business address). The check was issued as the result of a consent order agreed upon between the U.S. Department of Energy and The Union Oil Co. which resolved all existing disputes concerning the interrelation of Federal Petroleum Price and Allocation regulations for the period of March 6, 1973, through January 27, 1981.

The consent order states that Union Oil shall refund a total of $25,000,000 with $16,950,000 of that going to current and former members of its commercial class of customers. The amount of the refund was paid pro rata to the "commercial" customers based upon the dollar amount of their domestic purchases of all products from Union Oil.

The Trustee deposited the check and claims it is property of the estate. The plaintiff/debtor asserts that the money was paid after he filed his petition and therefore the funds are his and not the estate's.

## DISCUSSION

Both parties agree the sole issue in this case is whether or not the $8,010.23 is property of the estate pursuant to 11 U.S.C. § 541. If the answer to the forego-

ing question is "yes", then the Trustee should keep the funds as an asset of the estate but if the answer is "no" then the plaintiff's reclamation complaint should be sustained and the funds in question turned over to him.

The plaintiff believes that this case is one of first impression. As such he devotes most of his arguments differentiating his case from the numerous pertinent cases which would find the money belongs to the estate. Contrary to plaintiff's position, this Court finds that the only aspect of this matter that is novel is the source of the money in question. Aside from a different payor, this case is analogous to the well established tax refund cases which hold that any portion of a tax refund attributable to pre-petition withholding is property included in the estate.

11 U.S.C. § 541(a) states that the commencement of a case under § 301 creates an estate and that such estate is comprised of all "legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history of § 541 states that the right to a tax refund is property of the estate and that the holding of Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) remains viable under the Code. H.Rep. No. 595, 95th Cong., 2d Sess. 367 (1977); S.Rep. No. 989, 95th Congs., 2d Sess. 82 (1978); U.S. Code Cong. & Admin.News 1978, p. 5787.

Segal and its progeny are on point with this case because they deal with debtors who made over-payments during a period prior to the filing date but who did not receive the refund for those payments until after the filing date. In Segal the debtors had filed their bankruptcy petition in 1961. The debtors subsequently received loss-carryback tax refunds. The losses underlying the refunds had been suffered prior to the filing of bankruptcy so the losses were carried back to the years 1959 and 1960 to offset net income on which the debtors had paid taxes. A unanimous Supreme Court held that potential claims for loss-carryback tax refunds, realized after the close of the year in which the taxpayer files a bankruptcy petition, are property of the estate at the time of filing because even though freedom to accumulate new wealth was an important component of the "fresh start" policy of the Bankruptcy Laws, the loss carryback refund was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." Segal, supra, at 380, 86 S.Ct. at 515.

▮ The ruling of Segal has been adhered to in Bankruptcy Code cases involving excess withholding tax refunds. See, In re Doan, 672 F.2d 831 (11th Cir.1982); In re Collins, 24 B.R. 485, 9 B.C.D. 999 (Bankr.E.D.Va.1982); In re Sutphin, 24 B.R. 149 (Bankr.E.D.Va.1982); In re Rash, 22 B.R. 323, 9 B.C.D. 411 (Bankr.D.Kan. 1982); In Re Koch, 14 B.R. 64 (Bankr.D. Kan.1981); In re DeVoe, 5 B.R. 618, 6 B.C.D. 924 (Bankr.S.D.Ohio 1980); In re Nichols, 4 B.R. 711, 6 B.C.D. 597 (Bankr.E. D.Mich.1980). The principal remains the same. Money whose origin is part of the pre-petition period belongs to the estate pursuant to § 541.

The check in the amount of $8,010.23, which the Trustee deposited as an asset of the estate, was issued by The Union Oil Co. pursuant to a consent order between The United States Department of Energy and Union Oil. The consent order states that "it settles and finally resolves all civil and administrative claims and disputes against Union Oil by the U.S. Department of Energy, whether or not heretofore asserted, concerning events during the period of March 6, 1973, through January 27, 1981 ... with respect to the Federal Petroleum Price and Allocation Regulations." The consent order goes on to cite jurisdiction and regulatory authority for the order but it is sufficient to note that all of the relevant sections were in effect prior to the time the debtor filed his petition.

The plaintiff's arguments in favor of reclamation are threefold. First the plaintiff repeatedly argues throughout his brief that the check should be considered a windfall, a coincidence, or a fortuitous event, there-

fore having no connection to the pre-petition period. Next he admits that any cause of action belonging to him at the time the case was commenced is property of the estate but he claims no such right existed. Finally the plaintiff believes that this Court should consider that the Union Oil Company did not put "Hartley Trucking" on the check nor did they set-off a large debt owed to them by the plaintiff and so Union Oil's mistake, subjective intent, or mere inability to print more than a certain number of characters on a check should be determinative of this case.

■ The notion that Union Oil's payment was fortuitous could be entertained if it was a gift or Congress had passed legislation after the date of the petition declaring that among others, people with the name Hartley will be paid money by Union Oil, but under these circumstances the suggestion of coincidence is ludicrous. The payment was a refund to a class of commercial customers, the amount of which was determined pro rata based upon the dollar amount of their domestic purchases of all products from Union Oil during the period March, 1973—January, 1981. Rather than happenstance it is abundantly clear that Union Oil sent a refund to the Hartley Trucking Company because it made fuel purchases from it during certain years all prior to the date the petition was filed. If such over payments had not been made those funds would have been available for creditors as they now must be.

■ The plaintiff believes that because the check was addressed to "Jim Hartley dba" that it was not intended for the business but to him personally. Apparently the plaintiff is aware of how flimsy and irrelevant his assertion is because it was totally unsupported by any legal authority. The inclusion of the letters dba have the well established meaning of "doing business as" thus, taken in conjunction with the fact the check was addressed to the plaintiff's business address, it is clear that it was intended to be paid to the business. Whether the title Hartley Trucking was omitted from the check because

there was not enough room or the machine was programmed to print less characters than were necessary is of no consequence as is this entire argument. The intent, mistake, or mechanical limitations do not alter the origin of these funds and they will not be determinative in this case. The same analysis holds true for Union Oil's failure to utilize its right to set-off against its approximately one million dollar claim against the plaintiff. Whether they intentionally did not do so or if it was a mistake, it doesn't have any effect on the legal issue in this case.

■ Finally on page 10 of his brief the plaintiff states that he "accedes to the proposition that any *causes of action* (his emphasis) belonging to Mr. Hartley at the time the case was commenced is property of the estate which is created pursuant to § 541(a)." Naturally the plaintiff claims he could not find any law which conferred such right. The plaintiff should have looked further.

The jurisdiction and regulatory authority for the consent order is under Title 42 U.S.C. § 7151 and 7193. However The Department of Energy Authority for Enforcement of the Emergency Petroleum Allocation Act is not exclusive. Title 15 U.S.C. § 754 which is part of The Emergency Petroleum Allocation Act provides in pertinent part:

(a) Applicability of Economic Stabilization Act of 1970: penalties

(1) Except as provided in paragraph (2), (A) sections 205 through 207 and *sections 209 through 211 of the Economic Stabilization Act of 1970 (as in effect on November 27, 1973) shall apply* to the regulation promulgated under section 753(a) of this title, to any order under this chapter, and to any action taken by the President (or his delegate) under this chapter, as if such regulation had been promulgated, such order had been issued, or such action had been taken under the Economic Stabilization Act of 1970; and (B) section 212 (other than 212(b)) and 213 of such Act shall apply to functions under this chapter to

the same extent such sections apply to functions under the Economic Stabilization Act of 1970. (emphasis added)

§ 210 of the Economic Stabilization Act of 1970 states that an individual is entitled to legal relief as follows:

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

(c) For the purposes of this section, the term 'overcharge' means the amount by which the consideration for the rental of property or the sale of goods or services exceeds the applicable ceiling under regulations or orders issued under this title.

It is clear that the debtor would have been entitled to pursue an action against Union Oil and the fact that the Department of Energy recovered the funds does not change the fact that the origin of the refund was prior to debtor's filing date. Thus by his own admission plaintiff's case collapses and the property remains an asset of the estate pursuant to § 541.

In light of the foregoing, it is hereby,

ORDERED that plaintiff's complaint for reclamation of property be, and it hereby is, denied and dismissed with prejudice.