In re: **CLIPPER INTERNATIONAL CORPORATION, Debtor.**

**Paul BOROCK, Trustee,**
**Plaintiff–Appellee,**

v.

**Paul MATHIS, Jr.; Paul Mathis,**
**P.C., Defendants–Appellants.**

No. 96–2514.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1998.

Decided Aug. 18, 1998.

Stephen J. Pokoj (argued and briefed), Walter B. Fisher, Jr. (briefed), Fildew, Hinks, Gilbride, Miller & Todd, Detroit, MI, for Plaintiff–Appellee.

Paul Mathis, Jr. (argued and briefed), Lake Tindall, Greenville, MS, for Defendants–Appellants.

Before: KEITH, BATCHELDER, and DAUGHTREY, Circuit Judges.

## OPINION

DAUGHTREY, Circuit Judge.

The defendants, Paul Mathis, Jr., and Paul Mathis, P.C., appeal from the district court's reversal of a bankruptcy court's grant of summary judgment to them on a claim that Mathis and his corporation converted money belonging to the estate of the debtor, Clipper International Corporation. The defendants contend that they, as the attorneys for the debtor corporation prosecuting a state court action to recover funds improperly paid by a state agency five years after the close of the bankruptcy estate, cannot be guilty of converting those funds. We disagree and conclude that the judgment of the district court should be affirmed.

### PROCEDURAL AND FACTUAL BACKGROUND

In 1981, Clipper International Corporation, through its president and sole shareholder, Samuel Gorman, filed for bankruptcy pursuant to the provisions of Chapter 11 of the Bankruptcy Code. As part of the attempted reorganization of the corporation, certain assets of the business entity were sold to a separate company originally known as 750 Clipper Corporation. Pursuant to the sales agreement, the debtor also sold to 750 Clipper Corporation "[t]he sole right to the use of the name 'Clipper International Corporation.'" Specifically excluded from the sale, however, were "all cash, accounts receivable and choses in action" owned by the original Clipper International Corporation. All *real property* of the debtor was eventually abandoned by the trustee and, on May 25, 1982, the Chapter 11 bankruptcy was converted into Chapter 7 proceeding. The estate was closed by court order on January 23, 1984.

From 1976 to 1981, the original Clipper International Corporation obtained workers' disability compensation insurance through the Accident Fund of Michigan, a state agency. Consequently, on April 26, 1989, when the Accident Fund determined that it had accumulated an excessive surplus of money due to premium payments made by policy holders in 1977–1979, the debtor, Clipper International Corporation, was listed as a payee on a dividend check issued by the Accident Fund. The dividend was, however, sent to the former 750 Clipper Corporation, which had by that time taken on the same name as the debtor.

Samuel Gorman, hearing of the issuance of the check, and purporting to act on his own behalf and on behalf of the debtor, filed suit, through his attorneys, Paul Mathis, Jr., and Paul Mathis, P.C., in Wayne County Circuit Court seeking to recover that dividend. The former 750 Clipper Corporation admitted that it had no rightful claim to the money and agreed to deposit with the court the sum of $59,076.08. The Accident Fund then entered into an agreement with Gorman whereby the Fund also denied any claim to the money, and Gorman agreed, in exchange for payment of the dividend from the court coffers, to hold the Fund harmless for any liability resulting from the dividend payment. On August 23, 1989, the Michigan state court entered an order in accordance with the terms of the agreement and dismissed the matter with prejudice. The defendants, Paul Mathis, Jr., and Paul Mathis, P.C., retained approximately one-third of the recovered dividend, or $20,000, as their fee for the legal work connected with the litigation.

On April 15, 1991, the bankruptcy trustee reopened the Clipper International Corporation case and filed an adversary proceeding against Gorman, the Accident Fund, Mathis, and Paul Mathis, P.C., requesting that the adversary proceeding defendants turn over the amount of the dividend payment for the benefit of the debtor. The trustee claimed

that the Accident Fund was aware of the existence of the Clipper International Corporation bankruptcy at the time it turned over funds to Gorman and thus breached its duty to pay that money into the bankruptcy estate. The complaint further alleged that Gorman himself, Mathis, and Paul Mathis, P.C., were also aware of the bankruptcy proceeding and, by accepting the money paid to them, converted funds properly payable only to the estate of the debtor.

The bankruptcy court granted the trustee's motion for summary judgment against the Fund and, because Gorman did not answer the motion filed against him, also granted the trustee's motion for summary judgment against Gorman. In assessing the merits of the claim against Mathis and Paul Mathis, P.C., the bankruptcy court first ruled that the dividend payment was clearly property of the estate. The court concluded, however, that the defendants were not guilty of conversion of a portion of those funds because the attorney and his corporation held those monies only pursuant to a Michigan state court order granting attorney's fees for the successful recovery of the dividend payment originally made to the former 750 Clipper Corporation. Eventually, therefore, the bankruptcy court granted summary judgment in favor of the defendants.

The trustee then perfected a timely appeal to the district court. The district judge adopted the findings of fact made by the bankruptcy court and concurred in the bankruptcy court's legal conclusion that the dividend payment was properly termed property of the bankruptcy estate. The district court reversed the summary judgment granted in the defendants' favor, however, after deciding that the retention of funds by the defendants was improper, even if done pursuant to a court order, when the defendants knew that the state court issuing that order had no jurisdiction over bankruptcy estate property. Paul Mathis, Jr., and Paul Mathis, P.C., now appeal that determination to this court.

## DISCUSSION

### I.

■ In reviewing district court decisions on bankruptcy matters, this court accords discretion only to "the original bankruptcy court findings, not those included in the decision rendered by the district court, since '[t]his court is "in as good a position to review the bankruptcy court's decision as is the district court." ' " *In re Omegas Group, Inc.*, 16 F.3d 1443, 1447 (6th Cir.1994) (citations omitted). The court reviews bankruptcy court findings of fact for clear error and conclusions of law *de novo. Id.*

### II.

### A. *Property Of The Estate*

■ On appeal, the defendants contend that the dividend payment received from the accident fund cannot be considered property of the bankruptcy estate because the estate had been closed by court order in 1984, five years prior to the dividend distribution. The defendants, however, misapprehend the reach of the bankruptcy statutes. Pursuant to 11 U.S.C. §§ 541(a)(1) and (a)(7), property of the estate is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case," and "[a]ny interest in property that the estate acquires after the commencement of the case." Thus, "[m]oney whose origin is part of the pre-petition period belongs to the estate pursuant to § 541." *Hartley v. Derryberry (In re Hartley)*, 47 B.R. 159, 161 (Bkrtcy.N.D.Ohio 1985).

In this matter, the dividend payments clearly have their origin in pre-petition transactions. In fact, were it not for the overpayment of premiums by the debtor during 1977, 1978, and 1979, no dividends from those years would have been credited to Clipper International Corporation in 1989. The bankruptcy court and the district court thus properly concluded that the payment was property of the bankruptcy estate.

### B. *Alleged Conversion Of Dividend Funds*

As noted by both the bankruptcy court and the district court, the mere possession of estate property by the defendants does not make Mathis and his corporation liable to the trustee. Rather, liability may be premised

only upon the *wrongful* possession of property of the estate. Conversion is such a wrongful possession. Under Michigan law, "conversion" is defined as "a distinct act of dominion wrongfully exerted over another's personal property ... [that is] committed by ... intentionally dispossessing another of a chattel, ... [or] ... refusing to surrender a chattel on demand.... Liability for conversion does not arise if the actor is privileged to dispossess another of the chattel." *Rohe Scientific Corp. v. National Bank of Detroit,* 133 Mich.App. 462, 350 N.W.2d 280, 282 (1984) (citations and internal quotation marks omitted).

■ We must, therefore, determine whether the defendants' refusal to turn over that portion of the dividend payment that constituted their attorney's fee was allowable under applicable law. The plain language of the Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee ..." 11 U.S.C. § 542(b). Moreover, a custodian of property with notice of the commencement of bankruptcy proceedings "shall deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property...." 11 U.S.C. § 543(b)(1).

The defendants first contend that, despite the facts that Paul Mathis once represented Clipper International Corporation in a prepetition matter and that he once served as secretary of the corporation, Mathis and his corporation had no notice or knowledge of the subsequent bankruptcy proceedings involving the company. Without such knowledge, claim the defendants, they cannot be held liable for return of attorney's fees legitimately earned in representation of a client in litigation. Regardless of the underlying merits of the defendants' argument, the supposition made in advancing that position is erroneous. Mathis, individually and on behalf of his corporation, clearly *was* aware of the existing bankruptcy activities involving Clipper International Corporation. In prosecuting Clipper International Corporation's state court action against 750 Clipper Corpo-

ration, Mathis offered an affidavit of Gorman, the owner and sole shareholder of the company. In that sworn court document, Gorman, Mathis's client, admitted that Clipper International Corporation, as a "Debtor Corporation in bankruptcy," sold its assets to 750 Clipper Corporation. That affidavit was, moreover, offered a full month prior to entry of the stipulated order, signed by Paul Mathis, Jr., on behalf of Paul Mathis, P.C., dismissing the state court case and directing payment of $59,076.08 to Gorman "and his attorney, Paul Mathis, P.C." The record before this court thus clearly establishes the defendants' prior knowledge of the bankruptcy proceedings at issue in this matter.

The defendants next insist that the district court's interpretation of applicable law was incorrect, arguing that retention of the attorney's fees after demand by the bankruptcy trustee could not have amounted to conversion of those funds under Michigan law, because they came into the hands of the defendants pursuant to a state court decree. We conclude, however, that the district court's resolution of this dispute is correct. Because the dividend distribution resulted from overpayment of premiums made in the prepetition period, that property was properly included in the estate of the debtor. Consequently, only the bankruptcy court had jurisdiction to direct the manner in which such monies would be divided. An attempt by the Michigan circuit court to distribute proceeds of that payment to parties with knowledge of the bankruptcy court's overriding interest in such property cannot be accorded deference.

The approach taken by the district court in this case serves the important purpose of ensuring that property of the bankruptcy estate is returned to the trustee for distribution to all creditors of a debtor. Moreover, the decision recognizes the important principle that a court without jurisdiction over the *res* of an action cannot divert property of a bankruptcy estate from the trustee administering that estate.

The defendants do argue that such a result is unnecessarily harsh considering the labor they expended for their contingency fee in the underlying state court litigation. Any

sympathy the defendants may have otherwise engendered, however, is tempered by the realization that the defendants knew that their client, the original Clipper International Corporation, had previously filed for bankruptcy, that the dividend payments sought in the state court proceeding were intimately tied with pre-petition activities of the debtor, and that those payments were, therefore, properly includable in the bankruptcy estate.

### C. Alleged Double Recovery By Estate

■ In a final effort to obtain control over a portion of the challenged Accident Fund award in this case, the defendants contend that a finding of liability on their part would result in an unconscionable double recovery for the bankruptcy estate because the Accident Fund has already tendered payment of the dividend amount to the trustee. As noted by the trustee, however, the estate has also been damaged by incurring its own legal fees in the prosecution of this action to recover that money. Ordering the defendants to return to the estate an amount equal to the fees and expenses incurred in resolving this dispute would not, therefore, unjustly benefit the estate, but rather, would merely compensate it for expenses incurred.

### CONCLUSION

The district court correctly ruled that the defendants had no legal justification for refusing the trustee's demand to turn over to the bankruptcy estate the attorney's fees earned in a state court litigation. Consequently, the defendants are liable for conversion of that portion of their fee that should have been returned to the trustee to make the estate whole. The judgment of the district court is, therefore, AFFIRMED, and the case is REMANDED to the bankruptcy court for a determination of the amount the defendants must reimburse the estate. On remand, the bankruptcy court may also determine the propriety of the trustee's assertion that the court should assess treble damages, costs, and attorney's fees against the defendants pursuant to the provisions of M.C.L.A. § 600.2919a.